JOHN STEARNS, Plaintiff in Error, *v.* BENJAMIN GITTINGS, Defendant in Error.

ERROR TO HANCOCK.

The ninth section of our "conveyance act" is constitutional, as a limitation law.
Under this section the owner of the land may defeat the right of the holder of the "claim and color of title" by the payment of taxes at any time before the period of limitation has arrived, or by making entry and taking actual possession of the land at any time before the adverse claimant becomes its occupant,

or by a recovery in ejectment before the statutory bar has attached and occupancy is had, by the holder of the color of title.

Under this section, the first payment of taxes being the payment from which the time of limitation begins to run, must be made after the acquisition of the claim and color of title, and the taxes must be paid *by the claimant* for a period of seven successive years, otherwise he is not entitled to the benefit of the statutory limitation.

The payment of taxes and color of title must concur.

THIS case was tried before 'SIBLEY, Judge, and is the same case reported in 19 Ill. R., page 379, where the facts are fully stated. The only new facts now presented are set out in the opinion.

WILLIAMS, GRIMSHAW & WILLIAMS, for Plaintiff in Error.

BROWNING & BUSHNELL, for Defendant in Error.

WALKER, J. In this case, we are asked to review the decision announced, when it was before the court on a former occasion, and to hold the ninth section of the conveyance act unconstitutional and void. In that opinion it was held that the section under consideration could not be upheld and sustained, as an act which transfers vested rights or titles from one person to another, but that it was a limitation law, and as such, should be governed by the same rules as all other acts of that character. That decision was announced after a full argument of the question, upon mature reflection, and was unanimously concurred in by a full bench. Since that time, there have been other cases before the court depending upon the same section, and rights enforced under its provisions, and there have, doubtless, been many purchases made, and covenants entered into, upon the faith of those decisions. While these are not considerations which can have a controlling influence in the decision of this question, they nevertheless admonish us, that before a different rule is adopted, we should be fully satisfied of the incorrectness of that already existing. If this provision contravenes the fundamental law of the State, we know of no consideration, however high and important, that can justify enforcing it, as a valid law. But at the same time mere doubts of its constitutionality cannot justify the court in holding it inoperative as a legislative enactment.

The eighth section of the same act, which, in its material features, and in every essential element which is required to enter into a constitutional limitation law, is the same as this section, has repeatedly, and through a long series of decisions, embracing a number of years, been sustained as a valid limitation law, and yet it is believed that every objection which may be fairly urged against the ninth, may, with equal reason and force,

be applied to the eighth section. If we were to hold the ninth section invalid, no escape is perceived, from being compelled, for the very same reasons, to hold the eighth as equally in contravention of the provisions of the constitution. While our bill of rights has declared " that no freeman shall be imprisoned or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the judgment of his peers, or the law of the land," still we do know, that while this provision is in substance contained in the bill of rights in every State of the Union, yet it has never, so far as we are aware, been questioned that the legislature has competent power and authority to adopt such laws; nor is the right contested in this case. Then, if the right is granted, the legislature, in exercising that power, is not limited in the provisions of such acts, except in so far as prohibited by this restriction. All limitation acts provide that before the citizen is deprived of his right, by their operation, he shall have a trial by jury, to ascertain and determine whether, by lapse of time, and omissions on his part, he has forfeited his right to assert his title under the law. And this is the construction given to this section. This act, like all other limitation laws, does not transfer the title of the owner to the occupant, but simply prohibits him, after the bar of the statute has become complete, from asserting his right. The statute creates the bar, and the courts prohibit the owner from asserting his right against it. And so far as this act professed to pass the title, it could not be sustained, but when held to be a limitation law, then it rested upon the same basis as do all other acts of that character.

Whilst it is usual in framing limitation acts, which bar the entry or the right of recovery, to make possession the most important requirement in the creation of the bar, yet no decision of which we are aware, has ever held, that possession is essential to the constitutional validity of such enactments. That the act should afford reasonable time and opportunity for the assertion of the right, and barring the remedy for *laches*, and the non-assertion of the right, within the limited period, is believed to be all the constitution requires. The terms and conditions upon which the bar may become complete, in other respects must necessarily be left to the discretion of the legislature. The circumstances demanding the legislative interposition in such enactments, must always have a controling influence in their adoption. While the time and opportunity for the assertion of the right must be reasonable, and while the act cannot transfer title, yet the constitution has not prescribed, nor can the courts prescribe, the provisions which such an act must contain. Then does this enactment afford reasonable time and opportunity for

asserting the right by the owner as against the holder of the color of title? It affords him the full period of seven years to institute his suit, to vindicate his title and prevent a bar, if he can, within that period, procure service upon the holder of the color of title within the jurisdiction of the court. It likewise affords him the opportunity, at any time within the seven years, after the holder of color of title has made the first payment of taxes on the land under his color, to assert his right by paying taxes for any one year, and by that means to defeat the bar of the statute. He has also the right to assert his title and defeat a bar, by taking possession of the land, at any time before the holder of color has entered into its occupancy under his color of title. Under limitation laws as they are usually framed, and where possession is a requirement, the only means of asserting title, is by action for a recovery of the premises. This section, when dispensing with possession during the period of limitation, as an element necessary to acquire the benefit of the statutory bar, has given, as a compensation, the other modes of asserting his title, by payment of taxes before the period of limitation has arrived, or by making his entry either before or after the expiration of the seven years, and reducing it to actual possession before the holder of the color has become its occupant, or by a recovery in ejectment, before the bar has attached and occupancy is had by the holder of the color of title. Containing these provisions as this section does, we are not prepared to hold, that it does not afford reasonable time and opportunity for the owner to assert his title, and thereby defeat the bar of the statute.

The mere hardships which may occur under this act, are only such as are incident to all limitation laws. The fact that the holder of the color of title resides beyond the limits of the jurisdiction of the court, so as not to be amenable to its process, is undoubtedly a hardship, but it may be readily and cheaply obviated, by performing a duty which he, the owner, owes to government, by paying the taxes which have been assessed upon the land, at least once in seven years. Or by reducing it to possession, before the holder of the color obtains the occupancy of the land. The non-residence of the adverse claimant, is surely not so great a hardship, as it is under our other limitation acts, when the claimant has entered, and before the bar is complete, the owner of the better title dies leaving infants, feme coverts, or persons *non compos*, heirs to the property. In such a case, the law has incapacitated them to take any steps for its recovery, and yet, when the statute has once begun to run, it does not stop until it has matured into a bar. The time and opportunity for the assertion of the right, under the ninth sec-

tion, as against a person not within the reach of the process of the court, is certainly as reasonable, and in fact much more so than in the other case. We, from these considerations, are induced to adhere to the former decision, holding this act constitutional as a limitation law. By holding that the owner of the true title may defeat the bar, under the ninth section of the act, by taking possession at any time before the holder of the colorable title shall do so, whether before or after the expiration of the seven years, we but enforce the manifest policy of the State, which is to encourage the settlement and occupancy of all the lands within her limits. This is a cardinal and manifest policy with all civilized governments, and especially so in all new States, where much of its soil is vacant and unproductive.

In this case, the sufficiency of the appellant's title, to authorize a recovery, is not questioned, unless his right is barred by the operation of this section of the statute.

The facts appearing in this case are the same that appeared in the record when it was formerly before the court, except that it now appears that Denman paid the taxes for John Ward on this land, for the year 1844, on the 5th of February, 1845, while he did not acquire it by conveyance until the first of September following. That Wm. G. Ward received a conveyance from John Ward on the 1st day of March, 1848, and died about the month of August following, and that the taxes for that year were paid on the 22nd of December of the same year, for and with the money of his executors. The first payment of taxes appearing from the evidence, which concurs with color of title, was made on the 21st of March, 1847, and the last payment was made for the year 1854, and prior to the commencement of this suit, which was to the March term, 1855. This would embrace a period of more then seven years after the first payment of taxes under the color of title. The theory of all limitation laws affecting real estate, is said to be that the person claiming the benefit of the bar must have done some act, or asserted some right over the property, indicating an intention to appropriate it to his own use, under a claim of ownership. Until some such adverse act is done by the claimant, hostile in its nature to the rights of the owner, the statute cannot begin to run. The ninth section of this act has substituted the payment of taxes for possession to a certain extent, and under it the payment must be made as the first hostile act which the owner is required to regard as manifesting an intention to appropriate the property to his use, by the holder of the color of title. So of the entry into possession by the adverse claimant under the eighth section, and under neither can the statute begin to run until the several acts as required by each section

respectively are performed. Nor can these acts relate back to the time of the acquisition of title, or to the period when the taxes of former years had been assessed but not paid. If, after the statute has begun to run, the holder of color shall pay all taxes legally assessed upon the land, for the period of seven successive years, then the requirements of the statute have been complied with, and the bar becomes complete. And it can make no difference whether the taxes assessed subsequent to the commencement of the running of the statute have been paid within the current year or not, or even if during some portion of the intermediate time no taxes have been assessed, so that there be seven full and complete years between the first and last payment, and that all taxes legally assessed during that period have been paid by the person holding the color of title. The payment made in 1845, prior to the acquisition of the color of title by the tax payer, could not be regarded as the first payment under this section, as the payment and color did not concur. Nor can the payment of the taxes of 1845 be held operative prior to their payment in March, 1847.

The next question is, whether the payment of the taxes on this land for 1848, by the executors of Wm. G. Ward, in their name and with their money, is a payment by the holder of the color of title. It is not contended that by the will of which they were the executors, they took any title to, or interest in this land, beyond a mere naked power to sell it, and receive the purchase money. By the will the title was vested in the devisees, subject to be defeated by its sale by the executors. The will neither required nor authorized them to pay these taxes, nor does the law impose it as a duty. It would hardly be contended, if an attorney in fact were to pay taxes on the land he was empowered to sell, in his own name and with his own money, without authority from his principal, that such a payment would answer the requirements of the statute, and no difference is perceived in the two cases. If the executors designed to pay for the devisees, why not pay and take the receipt in their names, and not in the names of the executors? We are therefore of the opinion that this payment cannot be held to have been made by the holders of the color of title within the meaning of the statute. It then results that there was not payment of taxes, for seven successive years, by the person holding the color of title, before the institution of this suit, and the defendant below could not invoke the aid of the statute to protect him against a recovery.

For these reasons the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*