GEORGE M. McCONNEL

*v.*

JOHN KONEPEL.

1. LIMITATION OF ACTIONS—*seven years limitation act—construction of.* The settled construction of the limitation law of 1839 is, not that seven years must elapse between the date of the first payment of taxes and the date of the

last payment, but, that all taxes must be paid for seven successive years, and that seven years must elapse from the date of the first payment, when the statute begins to run, before the commencement of suit, or possession taken of the land, when the bar is claimed under the 9th section.

2. SAME—*suit must be brought within three years—when.* Under the act of March 2, 1839, entitled: "An act to quiet possession and confirm title to land," but three years are allowed within which to bring suit, after the several disabilities enumerated in the third section of that act have been removed.

TAXES—*payment of by one tenant in common, upon joint property, enures to the benefit of both.* This Court has before decided, that the payment by one tenant in common, on the joint property, will be considered as a payment by both.

APPEAL from the Circuit Court of Morgan county; the Hon. D. M. WOODSON, Judge, presiding.

This was an action of ejectment, brought in the Scott County Circuit Court, by appellant, at the March term, 1866, against the appellee, to recover eighty acres of land, situated in that county. At the same term the defendant pleaded, and by consent, the venue was changed to the Circuit Court of Morgan county, where a trial was had before the court, a jury having been waived, and judgment rendered for defendant, to reverse which, an appeal was taken by the plaintiff to this court. The further facts in the case are sufficiently stated in the opinion.

Mr. GEORGE M. McCONNEL, *pro se.*

Mr. H. B. McCLURE, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The counsel in this case have misconceived the meaning of the court in the opinions delivered in *Stearns* v. *Gittings*, 23 Ill., 387, and *Dickinson* v. *Breeden*, 30 ib., 279. The settled construction of the limitation law of 1839 is, not that seven

years must elapse between the date of the first payment of taxes and the date of the last payment, but that all the taxes must be paid for seven successive years, and that seven years must elapse from the date of the first payment, when the statute begins to run, before the commencement of the suit, or possession taken of the land, where the bar is claimed under the 9th section. In the first of the above named cases the payment was held sufficient. In the last, it was held not to be so, because the land did not remain vacant and unoccupied for seven years after the first payment. The court said the two sections could not be blended.

In this case the defendant proved payment of taxes under color of title for seven successive years, the first tax receipt bearing date January 24th, 1849, for the taxes of 1848, and the last bearing date March 6th, 1855, for the tax of 1854.

It is true, seven years did not elapse between these two dates, but the land was unoccupied at the date of the first payment, and from that time onward until 1858 or 1859, and this suit was not commenced until 1866. It was not necessary to show payment of taxes in 1856 for the taxes of 1855, in order to establish the bar, as this would be requiring eight years payment of taxes. That has never been the doctrine of this court.

It is urged, however, by the counsel for appellant, that the date of the first tax receipt was altered by writing the word January, over the word December, so as to make it bear date, January, 1849, instead of December, 1849. The tax receipt was admitted by the Circuit Court, and the original has been sent to this court with the record. We can not doubt that January was the true date of the receipt, as its genuineness is not disputed, and the taxes of 1848 were payable in January, 1849, and could not have been paid as late as December, 1849. Neither can we perceive how the alteration would be material, on the ground suggested by counsel for appellant, for if the statute only began to run on the 24th of December, 1849, the bar

66—46TH ILL.

would still be complete. It is suggested that Charles Collins, the then owner of the land, died in March, 1849, and that an undivided half of the land descended to his sister, who was a married woman, against whom the statute would not begin to run if the taxes were not paid until December, 1849. It appears by the record that her husband is dead, though it does not appear when he died, but even that is immaterial, as the administrator's sale, under which the plaintiff claims, was made on the 3d day of January, 1863, and if the sale was valid, as claimed by the plaintiff, the title of which Collins died seized was wholly freed from the alleged disability by vesting in the plaintiff, and he did not commence this suit until March 2nd, 1866, a period of more than three years from the date of the administrator's deed. The statute of 1839 allows but three years for bringing the suit after disability removed.

It is also suggested that the payment of taxes for 1848 did not concur with the color of title. The tax receipt ran to the trustees of Illinois College. In January, 1849, when the taxes were paid, the color of title was in the Illinois College and in Michael and Frederick Collins, as tenants in common. In June, 1849, the College conveyed to Nathaniel Coffin an undivided half of the land by deed of warranty, and in August, 1849, Michael and Frederick Collins also conveyed to Coffin, by deed of warranty, the other undivided half. Coffin then continued to pay the taxes in his own name. His last payment was in March, 1855, for the taxes of 1854.

It is in proof that Michael and Frederick Collins conveyed an undivided half of this land to the college in 1843, and that; at that time, an arrangement was made between them and the college and Coffin, that Coffin should pay the taxes on this land and many other parcels owned by the parties jointly, as their common agent, until the lands should be sold ; and Frederick Collins testifies that every year he paid to Coffin, for himself and Michael Collins, one half of the taxes on these lands, including the tract in controversy, until he sold to Coffin

in August, 1849. As Coffin was the regular agent of the college and the Collins, for paying their taxes ; as he took warranty deeds from both of them for this land, in June and August, 1849 ; as the taxes had been payable and a lien months before that date, as the tax receipt was endorsed in the handwriting of Coffin, and since, as already stated, he could not have paid the taxes of 1848, in December, 1849, it cannot be doubted that he paid them at the time the receipt purports to bear date, to wit: in January, 1849, and though the receipt runs to the college, the taxes were really paid with the money of the college and Michael and Frederick Collins, by their common agent. The color of title was in the college and M. & F. Collins, at that time. It was immaterial to which of them the receipt ran. It was held in *Chickering* v. *Failes*, 38 Ill., 342, that one tenant in common may pay for the benefit of himself and his co-tenant. We can discover no error in this record, and the judgment must be affirmed.

*Judgment affirmed.*