## SAMUEL BLAIR

### *v.*

## CHARLES JOHNSON *et al.*

*Opinion filed June 23, 1905.*

1. DEEDS—*when tax deed is not proof of paramount title.* A tax deed purporting to convey the paramount title is not sufficient proof of such title, in the absence of proof of the tax judgment and precept upon which the deed is based.

2. SAME—*when deeds are not color of title.* Neither a deed from a life tenant nor a tax deed to the life tenant's wife for taxes which the life tenant has failed to pay can be relied upon as color of title made in good faith by a purchaser having notice of the facts, as against the holder of the paramount title in fee.

3. TAXES—*purchase by a life tenant or his wife at a tax sale amounts only to payment of taxes.* A purchase by a life tenant or his wife at a sale of the property for taxes which it was the duty of the life tenant to pay amounts only to a payment of the taxes, and creates no rights adverse to the holders of the title in fee.

4. LIMITATIONS—*payment of taxes must coincide with color of title.* Claim and color of title made in good faith, actual adverse possession for seven successive years and payment of taxes for seven years must all concur in point of time in order to perfect a title under section 6 of the Statute of Limitations.

5. SAME—*statute does not run against remainder-men until preceding estate ends.* Possession of a life tenant, or those claiming under him, is not hostile to the remainder-men until the life estate has ended, nor does the Statute of Limitations begin to run against the remainder-men until that time.

APPEAL from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

This is a bill in chancery, filed on February 26, 1903, by the appellant against the appellees, alleging that appellant is the owner in fee simple of lot 10 in block 4, north, range 2, east of the public square in Hezekiah Cunningham's addition to Danville in Vermilion county; that Charles Johnson is the holder of a tax deed, dated March 24, 1892, conveying one-fifteenth east side of said lot, which said tax deed is alleged to be a cloud upon the title of the appellant as to the

one-fifteenth off the east side of said lot 10; that said lot was in October, 1867, the property of one Matilda T. Miller of Vermilion county, who executed a will, directing that said lot be sold and the proceeds thereof be equally divided between George G. Booker and his heirs and Matilda McHenry and her heirs, and that her husband, James H. Miller, have the use of the same during his natural life; that, on or before February 22, 1870, the will of said Matilda T. Miller was admitted to probate in said county, and James H. Miller was appointed executor of said will, the said Matilda having died prior to the probate thereof; that the said George G. Booker and Matilda McHenry have both departed this life; that the said Matilda McHenry married with one Hobart, now deceased, and died on February 13, 1887, leaving as her only heir-at-law one child, Marguerite Hobart Schwartz, who, with her husband, quit-claimed her interest in said lot to appellant on November 8, 1902; that George G. Booker died, leaving him surviving, as his heirs, a widow, Jennie Booker, subsequently married to one Erwin, and one brother, named James Booker, and one sister, named Margaret Booker who married a man named Fitzgerald; the heirs known and unknown of said George G. Booker and of his deceased brother and sister being defendants to the bill below, and appellees here; that the interests of the heirs of the deceased brother and sister of George G. Booker and of the heirs or heir of said Matilda McHenry are apparent merely, and not real and substantial, and are subject to the interest of complainant; and praying that the fee in and to said lot be found and confirmed in appellant, and that the tax deed to said Charles Johnson, and the apparent interests of each of the other defendants, and of the unknown heirs of George Booker, be held and declared to be merely apparent interests, and that the same be removed as clouds on the title of the appellant in and to said lot. The bill was subsequently amended by making James H. Miller, who is still alive, a party defendant thereto.

Answers to the bill were filed by the widow and heirs of George G. Booker, which answers denied the material allegations of the bill. Defaults were entered against Charles Johnson and James H. Miller.

A cross-bill was filed by the heirs of George G. Booker against the appellant, Samuel Blair, setting up the will of Matilda Miller, deceased, and that the cross-complainants were entitled to an interest as remainder-men in said lot, or in the proceeds thereof, subject to the life estate of the said James H. Miller, and praying that the appellant, and all persons claiming under him, may be forever enjoined from claiming or asserting any title or interest in said premises adverse to the interest of the cross-complainants. The cross-bill was answered by Blair, denying the material allegations thereof.

The cause, being at issue, was referred to a master in chancery to take evidence and report the same, together with his conclusions of law and fact. The master made a report to the effect that the complainant below, the appellant here, was not entitled to the relief asked in his bill, and that the same should be dismissed for want of equity, and that a decree should be entered in conformity with the cross-bill, and granting the relief prayed in the cross-bill. Objections were filed to the report, which were overruled by the master, and stood as exceptions, which exceptions, upon the coming in of the master's report, were overruled by the court.

On October 3, 1904, the court entered a decree, sustaining the master's report, finding the facts as found by the master, and granting relief in accordance with the prayer of the cross-bill, and dismissing the original bill for want of equity. The present appeal is prosecuted from the decree so entered.

SALMANS & BROWN, for appellant.

REARICK & MEEKS, O. M. JONES, and ARTHUR R. HALL, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

On October 1, 1867, one Matilda Miller was the owner in fee of the lot 10 here in controversy, and on October 2, 1867, made her will, and therein devised to her husband, the appellee, James H. Miller, said lot 10 upon the following terms and conditions, namely: "To be by him held and used for his personal benefit during his natural life, and at his death I desire that said last mentioned lot with its appurtenances be sold, and the proceeds thereof be equally divided between George G. Booker and his heirs and Matilda McHenry and her heirs." George G. Booker was a nephew, and Matilda McHenry was a niece of the testatrix. Matilda Miller died before February 22, 1870, and on that day her will was admitted to probate, and her husband, James H. Miller, was appointed executor of her will, but has never made final settlement of her estate, or been discharged from his duties as executor. James H. Miller, being a life tenant under the will of his deceased wife, Matilda Miller, entered upon the possession of the lot as such life tenant. After the death of Matilda Miller, James H. Miller married one Eliza Johns, who was one of the witnesses to the will of Matilda Miller, and lived with said Eliza Miller until her death.

On June 15, 1887, the west fourteen-fifteenths of said lot 10, then assessed to Matilda Miller, were sold at tax sale to one Will Beckwith for $30.30 for non-payment of the taxes of the year 1886. The certificate of purchase, issued to Will Beckwith at the sale, was assigned to said Eliza Miller, the wife of said James H. Miller, and thereafter on June 13, 1890, W. C. Tuttle, county clerk of Vermilion county, executed a tax deed to Eliza Miller, conveying to her the west fourteen-fifteenths of said lot.

On June 19, 1894, James H. Miller, and Eliza Miller, his wife, conveyed said lot 10 by quit-claim deed to one Charles J. Palmer of Danville, who entered into possession of said lot. On September 29, 1896, Charles J. Palmer, and

his wife, for an expressed consideration of $1700.00, conveyed all their interest in said lot 10 by quit-claim deed to the appellant, Samuel Blair of Vermilion county, who thereupon entered into the possession of said lot, and made certain improvements thereon. On September 26, 1896, one Edwin Winter, who had obtained a tax deed upon said premises, conveyed such interest, as he had under said tax deed, to the appellant, but said deed was without consideration. The appellant, Samuel Blair, claims to be the owner in fee of the whole of lot 10 here in controversy. His claim, as such owner in fee, is based upon the tax deeds of June 13, 1890, to Eliza Miller, the deed of June 19, 1894, from James H. Miller and Eliza Miller, his wife, to Charles J. Palmer, and the deed of September 29, 1896, from Charles J. Palmer and wife to the appellant, Samuel Blair, and upon the payment of taxes and possession for more than seven years under one or more of these deeds as color of title.

Leaving for the moment the question as to what title, if any, the appellant acquired through the deeds last mentioned, as his color of title, and through possession and payment of taxes thereunder, we will consider the interest, which appellant obtained, in addition to and outside of the tax title. When James H. Miller, and his wife, executed the deed to Charles J. Palmer on June 19, 1894, James H. Miller was the owner of a life interest in the property under the will of his deceased wife, Matilda Miller. Without doubt, by that conveyance Palmer became the owner of the life interest of James H. Miller, that is, of an interest in the lot for the life of James H. Miller, and, by the subsequent deed of September 29, 1896, appellant was the owner of an interest in the lot for the life of James H. Miller. Inasmuch as the lot was to be sold at the death of James H. Miller, and the proceeds were to be equally divided between George G. Booker and his heirs and Matilda McHenry and her heirs, and inasmuch as Marguerite Hobart Schwartz, the only heir of Matilda McHenry—who married one Hobart and died on February

13, 1887—with her husband quit-claimed all her interest in said lot to appellant by deed of November 8, 1902, appellant is the owner of such interest, as the heir of Matilda Mc-Henry had under the will of Matilda Miller as remainder-man in said lot, or in the proceeds of the sale thereof. At any rate, when, upon the death of James H. Miller, the property is sold, one-half of the proceeds will belong to the appellant as the grantee from the sole surviving heir of Matilda Mc-Henry Hobart. We pass no opinion upon the question whether the interest of the remainder-men under the will of Matilda Miller is realty or personalty.

A purchaser from the life tenant takes no greater interest than the interest of the life tenant. (*Rohn* v. *Harris,* 130 Ill. 525; *Turner* v. *Hause,* 199 id. 464.) Consequently, the deeds from Miller and wife to Palmer, and from Palmer to appellant, could have passed to the latter—leaving out of view the tax title—only the interest, which James H. Miller owned at the time, to-wit, a life tenancy.

But it cannot be said that the interest which appellees, who are the heirs of George G. Booker, had in the premises, or in the proceeds of the sale of the premises as remainder-men, has in any way passed out of them, or become vested in the appellant. It is not seriously contended, nor can it be, that the tax deed to Eliza Miller, or the tax deed to Winter, passed the paramount title. Those deeds were invalid as attempted conveyances of the parmount title. Aside from the insufficiency of notices, no tax judgment was introduced as a basis for the sales, under which the tax deeds were issued. A tax deed without the judgment and precept upon which it is based is no sufficient proof of paramount title. (*Gage* v. *Thompson,* 161 Ill. 403, and cases referred to).

Nor can it be said that the tax deed to Eliza Miller, dated June 13, 1890, or the deed from Miller and wife to Palmer, dated June 19, 1894, can either of them be regarded as color of title made in good faith. James H. Miller was not only the executor of the will of his deceased wife, Matilda Miller,

but he was life tenant under the provisions of the will, and, therefore, it was his duty to pay the taxes upon the property. Instead of doing so, he suffered the property to be sold for taxes, and procured a tax deed to be executed to Eliza Miller, his second wife. As life tenant, he could not become the purchaser of the property at the tax sale. The purchase of the property at a tax sale by a life tenant, whose duty it is to pay the taxes, amounts only in law to a payment of the taxes. In *Oswald* v. *Wolf*, 129 Ill. 200, we said (p. 215) : "The rule is well settled that persons who, by reason of their ownership of lands or otherwise, are under a legal or perhaps a moral obligation to pay taxes and assessments thereon, are precluded by the policy of the law from becoming purchasers of such lands at a tax sale. In case of a purchase such party obtains no independent title, the purchase being deemed in law only a mode of paying the taxes." In *Hanna* v. *Palmer*, 194 Ill. 41, we said (p. 44) : "The property in question was sold on the 28th day of May, 1883, for the taxes of the year 1882. At the time of the sale Maria L. Palmer was in possession of said premises as a homestead and was tenant for life thereof. * * * As such tenant for life it was her duty to pay the taxes on said premises, * * * and she could not neglect to pay the same and suffer the same to be sold, and become the purchaser, either directly or indirectly, at such sale, and thus acquire a valid title thereto; (*Lewis* v. *Ward*, 99 Ill. 525; *McChesney* v. *White*, 140 id. 330) ; and the fact that she did allow said premises to be sold, and afterwards acquired the tax title based upon such sale, by purchase, is evidence of bad faith on her part." (*McAlpine* v. *Zitzer*, 119 Ill. 273).

The fact, that the deed was made to Eliza Miller, the wife of James H. Miller, instead of James H. Miller himself, makes no difference. James H. Miller was in possession of the premises as life tenant when he married Eliza Johns, and the latter went into possession under him, or with him, when she married him. The proof shows that the affidavit for the

tax deed to Eliza Miller was made by James H. Miller himself, wherein he recites that a tax sale was had of the property on June 15, 1887, for the taxes of the year 1886, and that the lot was sold to Will Beckwith, and the certificate assigned by the latter to Eliza Miller, and that he, James H. Miller, served notice upon Charles Pond, the tenant in possession, and upon himself, James H. Miller, as the person, in whose name the property was taxed, and that Matilda Miller, in whose name the lot was assessed as the owner or party in interest, upon diligent inquiry made by him, James H. Miller, could not be found in Vermilion county, and did not reside therein from June 15, 1887, to March 15, 1889, he well knowing that said Matilda Miller, his first wife, was then dead. He was the agent of Eliza Miller if he was not actually acting for himself, and notice to him as such agent amounted in law to notice to Eliza Miller, his wife. "The policy of the law, which prohibits a person occupying a fiduciary relation from purchasing at his or her own sale of the trust property, equally forbids such purchase by the wife or husband of the seller." (*Lagger* v. *Mutual Union Loan Ass.* 146 Ill. 283; *Tyler* v. *Sanborn,* 128 id. 136). Her possession was not and could not be adverse to the possession of her husband, James H. Miller; nor was such possession hostile in its inception as adverse possession is required to be in order to create a title by limitation. (*Dewitt* v. *Shea,* 203 Ill. 393).

Palmer stands in no better position than Eliza Miller, or James H. Miller, because he purchased with full notice that James H. Miller was merely a life tenant. He swears that he knew what the will of Matilda Miller was, and knew that James H. Miller had only a life tenancy in the property. He received possession of the property from James H. Miller, not from Eliza Miller. He paid the consideration to James H. Miller, and took a deed of the property from the latter.

In *Lewis* v. *Ward,* 99 Ill. 525, it was said (p. 527) : "A purchase by one, whose duty it is to pay the taxes operates as

payment, and nothing more. Where it is made to appear it was the duty of the party to pay the taxes on the lands, the disqualification at once attaches, and a purchaser will not be permitted to derive an advantage from that which it was his plain duty, under the law, to do. The rule on this subject is plain, and is so just that it commends itself to the common judgment as right. * * * Under the circumstances, the purchase at the tax sale operated as payment of the taxes assessed against the land, and neither the purchaser nor his assignee could derive any valid title under the sale." So, in the case at bar, as James H. Miller, or his wife—who, under the facts here proven, occupies the same position which he occupied—could not derive any valid title under the sale, so Palmer, the assignee from Eliza Miller, having the notice already referred to, could not derive any valid title under the deed executed to him. In *McChesney* v. *White,* 140 Ill. 330, where the facts show that a party occupied the position of a trustee, it was held that his widow could not become the purchaser of a tax title, based on her neglect of her duty to pay the taxes, and it was there said: "Mrs. Moore was bound to pay the taxes out of the money received from the rents, and it seems obvious that she could not, by disregarding her duty, allow the lands to be sold for taxes and become the purchaser. She occupied the position of a trustee and she could not become the purchaser of the trust property. * * * Nor does the fact, that the land was bid off at the sale in the name of Langlois, who subsequently, under an arrangement with Mrs. Moore, agreed to accept redemption money, and deed to her, materially change the rights of the parties. She could not indirectly acquire a title, where the law would not allow her to acquire it directly. As respects plaintiff in error, Mc-Chesney, as the evidence tends to prove he purchased with notice of the trust relation of Mrs. Moore to the property, he occupies no better position than she occupied." Here, Palmer, who had notice of the trust relation which James H. Miller bore to the property, could occupy no better position

than James H. Miller, or his wife, did. It follows that the
tax deed to Eliza Miller cannot be regarded as color of title
made in good faith, and that the deed subsequently made by
James H. Miller and his wife to Palmer cannot be regarded
as color of title made in good faith. Hence, the payment of
the taxes by Eliza Miller from 1890 to 1894, and by Palmer
from 1894 to September 29, 1896, when he made a deed to
appellant, was not made under color of title acquired in good
faith, and cannot operate to build up a title under the Limita-
tion law for that reason. (*Hanna* v. *Palmer, supra*).

The appellant went into possession of the property under
the deed obtained by him from Palmer on September 29,
1896. It is unnecessary to inquire, whether he had or had
not notice of the same matters, which the proof shows that
Palmer had notice of. The possession and payment of taxes
under their respective deeds by Eliza Miller and Palmer can
not operate in favor of appellant, because such payment of
taxes and possession were under color of title made in bad
faith. Consequently, appellant's possession and payment of
taxes must begin with September 29, 1896, the date of the
deed executed to him by Palmer. Appellant's bill in this
case was filed on February 26, 1903, and seven years had not
elapsed after he obtained his deed on September 29, 1896,
before the time of filing this bill. The oral testimony shows
that the first payment of taxes, which appellant made, was
about the first of September, 1896; and the first tax receipt
introduced is dated April 15, 1897, being a tax receipt for
the payment of the taxes of 1896. Seven years did not elapse
between appellant's first payment of taxes—even if his deed
from Palmer be regarded as color of title made in good faith
—and the time of the filing of his bill. "In order to create a
bar under  *  *  *  section 6 of the present Limitation law,
seven years must elapse between the date of the first pay-
ment, when the statute begins to run, and the commencement
of the suit.—*McConnell* v. *Konepel*, 46 Ill. 519; *Lyman* v.
*Smilie*, 87 id. 259; *Iberg* v. *Webb*, 96 id. 415; *Holbrook* v.

215  36

*Debo,* 99 id. 372." (*Burton* v. *Perry,* 146 Ill. 71). It is well settled that the payment of taxes must coincide with the color of title. (*Macauley* v. *Mahon,* 174 Ill. 384; *Irving* v. *Brownell,* 11 id. 402). That is to say, claim and color of title to land made in good faith, actual adverse possession thereof for seven successive years, and payment of taxes thereon for said seven years must all concur to perfect a title by limitation.

Appellees, as heirs of George G. Booker, deceased, were remainder-men, and were entitled to one-half of the land, or to one-half of the proceeds of its sale, after the expiration of the life estate. This being so, appellees were not obliged to pay the taxes, but the duty of paying the same devolved upon James H. Miller, the life tenant. In addition to this, the possession of James H. Miller was the possession of the remainder-men. The possession of the life tenant, or of those holding under him, cannot be hostile to the remainder-men until the life estate has ended. Nor does the Statute of Limitations run against the remainder-men until the death of the life tenant. (*Orthwein* v. *Thomas,* 127 Ill. 554; *McChesney* v. *White, supra*). We have said: "The settled doctrine, both upon authority and upon principle is, that the possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner; and if he conveys to a third person by words purporting to pass the absolute property, the possession of the purchaser is not and cannot be, during the continuance of the life estate, adverse to the remainder-man or reversioner, so as to set the Statute of Limitations running against such remainder-man or reversioner, but after a life estate falls in, the possession will be adverse as to a remainder-man or reversioner." (*Mettler* v. *Miller,* 129 Ill. 630; *Turner* v. *Hause,* 199 id. 464). In the case at bar, the proof shows that James H. Miller, the life tenant, is still alive.

As the bill, filed by the appellant in the present case, proceeds upon the theory that he became the owner in fee of the interest, vested in appellees as remainder-men under the

will of Matilda Miller, by virtue of color of title, and payment of taxes, and possession thereunder for seven years as above stated, and as the claim thus set up by the appellant is not sustained for the reasons already mentioned, we are of the opinion that the decree of the circuit court, granting the relief prayed by the cross-bill, and dismissing the original bill for want of equity, is correct.

Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*