EVERETT DOOLEY, by Guardian, v. THOMAS A. GREENING, Appellant.

Division One, February 22, 1907.

1. DEED BY MARRIED WOMAN: Particular and General Words: Dower or Title: Circumstances. Joseph C. Greening had been adjudged insane, and on March 27, 1899, his real estate was sold by his curator, under regular proceedings, to his son, the defendant, and on the same day his wife executed a quit-claim deed to defendant, which recited: "I hereby convey . . . all of my right, title and interest whether dower or other interest as the wife of Joseph C. Greening of, in and to" the land in suit, "containing 160 acres more or less, hereby conveying and intending to convey all interest I may have in said land whether of dower or otherwise." The deed expressed a consideration of five dollars, which was never paid. She had at the time an estate in the land in her own right, but no other property, and was old, and if she conveyed her own estate by this deed she stripped herself entirely of property. Besides, it was her husband's land that was ordered to be sold, and it was sold for the purpose of enabling the curator to obtain means for his support. Held, that by the first clause of the deed she conveyed only her marital interest in her husband's estate in the land, and the second is broad enough to convey her own estate therein; but the rule of law being that, where general words follow particular words in a deed, the

general words must be so construed as to limit their meaning to the particular words, and in view of the surrounding circumstances, she intended to convey only her marital rights in the land, and not her own estate.

2. ———: By Wife of Husband Under Guardianship: Of Own Lands. The wife of a husband under guardianship cannot sell and convey her own real estate except under the order and supervision of the proper court, and by deed jointly executed by her and the guardian.

3. ———: ———: ———: Separate Deed. The statute requiring the real estate of the wife whose husband is under guardianship to be conveyed by the joint deed of herself and his guardian and under order of court, and not requiring her to join with the guardian in the deed conveying her husband's lands, it will be held, where she executed a separate deed conveying land in which she had an estate of her own and also an inchoate dower as his wife, that she meant to convey only her dower interest.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED *(with directions).*

*James H. Whitecotton* and *Thomas P. Bashaw* for appellant.

Instruction 1, asked by plaintiff, should not have been given. The deed of Mrs. Greening conveyed and vested in defendant that part of the land in controversy which the record shows she owned in her own right, as well as her dower in the part that belonged to her insane husband. This proposition plaintiff denies, and said instruction sustains him in such contention. The theory of the instruction is that Mrs. Greening's deed does meet the requirements of section 4334, Revised Statutes 1899. The first clause of said section empowers the wife of a man who is under guardianship to join with the guardian "in making partition of her own real estate" and to make jointly with the guardian any conveyance that may be necessary to effect such

partition; and with that clause we have nothing to do in this case. The second clause empowers such wife to sell and convey her own real estate by joining with the guardian in such sale and conveyance, under the order and supervision of the proper court, and provides that deeds "executed jointly by herself and such guardian shall have the same force and effect as if done with her husband if he had been under no disability." The third clause provides that in all cases where the real estate of such husband shall be sold by his guardian in due conformity to law, she may relinquish her right or dower in such real estate as fully as if her husband joined in the deed of release. There is no room for dispute that, under the third clause, Mrs. Greening's deed passed to defendant all her marital rights in that part of the land owned by her husband, since that clause provides expressly that where the lands of the husband are sold by his guardian in due conformity to law, the wife may relinquish her right or dower as fully as if the husband joined in the deed of release, and says nothing about the guardian joining in such case, as is provided in the second clause. It remains to be seen what was intended by the Legislature in the second clause empowering the wife to sell her own real estate by joining with the guardian in such sale under the order and supervision of the proper court and executing the deed jointly with him. Does this provision mean that she must sign and acknowledge the same identical instrument? If so, the instruction here complained of was properly given. But is such construction a reasonable one, under the peculiar circumstances of this case? The guardian in this case, in his petition for the sale of the real estate in controversy, proceeded upon the assumption that the entire tract belonged to his ward, Mr. Greening; and the probate court so found. It was not a proceeding, professedly, to sell real estate of the wife, and, therefore, on its face, not strictly

within conditions in contemplation in said second clause. That is to say, it was not, on its face, a proceeding by the guardian and the wife to sell the real estate of the wife. The wife was not a party to the proceeding. Mr. Greening in his lifetime, when sane, treated the entire tract as his own, when he made a will devising it to his wife for life, with remainder in fee to a son. Mrs. Greening, except in the deed she executed to defendant, March 17, 1902, does not appear to have ever claimed any title to any part of the land other than as the wife of Mr. Greening, nor to any part of the proceeds of the guardian's sale of it, except as such wife and widow. The guardian also further so treated the situation in the disposition he made of the proceeds of the sale. So that although it appeared at the trial that Mrs. Greening had inherited one-half of the land long before the passage of the married woman's separate property act, yet it is too plain for dispute, that in contemplation of all the parties to the transaction in the probate court, the entire tract was owned by Mr. Greening. Now, in such state of facts, why should she join in the guardian's deed? We have seen that under the third clause it was not necessary to join in the guardian's deed in order to convey her dower in that part of the land owned by her husband. It appears equally plain to defendant that it was not necessary for her to join with the guardian in the same instrument in order to convey the land she owned in her own right, for two reasons, first, because, properly construed, the second clause does not require her to sign the same instrument; and, second, because the facts in this case are not within the conditions of the second clause, in this, that the proceeding in the probate court was not a proceeding by her and her husband's guardian to sell her lands. The section under consideration was enacted long before recent legislation and judicial decisions, the general trend of which is to relieve married women

from the absurd and severe doctrines of the common law, .and it is fairly susceptible of a construction in entire harmony with the statutes and recent .decisions enlarging the rights and powers of married women. In this case the wife did not sign the identical instrument with the guardian; but her deed was made on the same day that the guardian's report of sale was approved by the probate court and the guardian ordered to make a deed. The two conveyances were practically cotemporaneous. Why should she be required to sign the same deed with the guardian? It contained recitals that she could not make, in fact, such an instrument would have been absurd on its face. The identical words of her own deed must have been incorporated in the guardian's deed, or it would have been inoperative as to her.

*W. T. Ragland* for respondent.

(1) The deed from Margaret J. Greening to defendant would not have passed the fee to the land in controversy even if the said Margaret had at the time been a *feme sole,* that is to say, if her husband had been dead. Both the grantor and the grantee at the time of the execution of the deed believed that the only interest grantor had in the land was that of inchoate dower. She received absolutely no consideration for a conveyance of land, and it is evident that the deed was executed solely for the purpose of relinquishing dower. The language of the deed is apt for that purpose only. 1. "The controlling canon for construction of deeds, as of wills and other instruments of writing, is to ascertain the meaning of the grantor from the words he uses in the light of the circumstances which surround him in his use of them." Long v. Timms, 107 Mo. 512; Walton v. Drumtra, 152 Mo. 489; Waddell v. Waddell, 99 Mo. 338; McCullock v. Holmes, 111 Mo. 447; Fanning v. Doan, 128 Mo. 323. 2. If the written and

printed portions of a deed conflict, the written portion must control. Davidson v. Manson, 146 Mo. 608. 3. The language of the deed is, "all of my right, title and interest whether dower or other interest as the wife of Joseph C. Greening . . . hereby conveying and intending to convey all interest I may have in said land whether dower or otherwise." The interest or estate embraced in the words, "all interest I may have in said land whether of dower or otherwise," can only be construed to be the character or class of interest or estate *ejusdem generis* with "dower or other interest as the wife of Joseph C. Greening." State v. Schuchman, 133 Mo. 111; State ex rel. v. Berch, 80 Mo. App. 665. 4. It has been held by this court that a warranty deed purporting to be that of a husband and wife, will not be effectual to convey the wife's land if she acknowledge only as wife, relinquishing her dower in the land. Hendricks v. Musgrove, 183 Mo. 300. (2) The deed from said Margaret J. Greening to defendant did not pass the fee to the land in controversy, however the deed be construed as to content, or whatever the intention of the parties thereto, because the said Margaret J. Greening was at the time of its execution a married woman and her husband was under guardianship. R. S. 1899, secs. 901, 4334. (3) A married woman who was married in the year 1844, and whose husband was on the 27th day of March, 1899, under guardianship, could not on said date, and while her husband remained in ward, convey her own real estate acquired by descent in the year 1833, without joining with the guardian of her said husband in such conveyance under the order and supervision of the court having jurisdiction of the guardianship and estate of her said husband; and this is true notwithstanding the passage since of various acts removing certain disabilities of married women. Clay v. Mayr, 144 Mo. 376; McReynolds v. Grubb, 150 Mo. 352; Leete v. Bank, 115 Mo. 184; Bartlett v. Ball,

142 Mo. 28; Leete v. Bank, 141 Mo. 574; Arnold v. Willis, 128 Mo. 145; Gladney v. Sydnor, 172 Mo. 318; Elliott v. Bristow, 185 Mo. 24; Mueller v. Kaessmann, 84 Mo. 318; Flesh v. Lindsay, 115 Mo. 1.

WOODSON, J.—This is an action of ejectment for the possession of an undivided one-fourth interest in a tract of land situated in Monroe county, the description of which will hereinafter be stated.

The petition was in the usual form, and the answer was a general denial.

A jury was waived, and the cause was submitted to the court upon an agreed statement of facts.

The court found for the respondent, and appellant, in due time, filed motions for a new trial and in arrest of judgment, which were, by the court, overruled, and he has duly prosecuted his appeal to this court.

James Dryden was the common source of title, and in September, 1833, he departed this life, intestate, leaving his widow, Milly Dryden, and his minor children, Margaret J. and William J. Dryden, his sole heirs at law. In 1836 Milly Dryden, his widow, married Mason Wilkerson. In 1844 Margaret J. Dryden married Joseph C. Greening.

Everett Dooley, the respondent, was the only surviving heir of Mattie H. Dooley, a deceased daughter of Joseph C. Greening; and William H., Thomas J., Arthur M. and Clarence Clapper, and Amelia Anderson were the sole heirs of Amanda Clapper, a deceased daughter of Joseph C. Greening; and William T. and Thomas A. Greening were his only children.

In July, 1838, the land in controversy was partitioned among his widow and heirs. To Margaret J. Dryden was allotted the south one-half of the east half of the southeast quarter of section twenty, and also the south half of the west half of the southwest quarter of section twenty-one; and William J. Dryden received

the north half of the same tracts, being eighty acres allotted to each.

In 1845 William J. Dryden died intestate, unmarried, and leaving as his only heirs at law his mother, Milly Wilkerson, and his sister, Margaret J. Dryden.

January, 1846, Milly Wilkerson and her husband conveyed their interest in the north half of the east half of the southeast quarter of section twenty and the north half of the west half of the southwest quarter of section twenty-one to Joseph C. Greening.

In February, 1898, Joseph C. Greening was duly adjudged to be a person of unsound mind, and his son, William T. Greening, was appointed the guardian of his person and curator of his estate.

On February 18, 1899, said curator filed his petition, in the proper court, praying for an order authorizing him to sell the land of his ward for his support and maintenance. Afterwards, the order of sale was duly made by the court, and the sale of the land was made by the curator, and on March 27, 1899, the report of sale was by the court approved, and on May 8, 1899, said curator made, executed and delivered a deed purporting to convey said real estate to Thomas A. Greening, a son of the ward, for the consideration of $2,800, which sale was duly approved. The deed was an ordinary curator's deed, duly executed.

On March 27, 1899, Margaret J. Greening, the wife of Joseph C. Greening, the ward, made, executed and delivered to said Thomas A. Greening her certain quitclaim deed, by which she remised, released and forever quitclaimed unto him the land described in the following language, to-wit:

"All of my right, title and interest whether dower or other interest as the wife of Joseph C. Greening of, in and to the east half of the southeast quarter of section twenty, and in the west half of the southwest quarter of section twenty-one, all in township fifty-five,

range eight west, and containing 160 acres more or less, hereby conveying and intending to convey all interest I may have in said land whether of dower or otherwise.''

The consideration expressed in the deed was five dollars, but no part of it was ever paid to her. The deed was made on an ordinary printed blank, and the blanks, as well as the portion above quoted, were written in by the scrivener who prepared the deed.

In June, 1899, said Joseph C. Greening departed this life, leaving his widow, Margaret J. Greening, and the children and grandchildren heretofore named as his only heirs at law.

The said Joseph C. Greening left a last will and testament, which was duly probated. All his property was willed to his widow for life, except a few minor bequests which were made to his grandchildren, and the remainder of his estate was willed to his two sons, William T. and Thomas A. Greening. The latter was appointed administrator of his estate. Joseph C. Greening had no personal estate except the proceeds of the sale of his land.

Upon proper orders the curator paid Margaret J. Greening the sum of $267.50 out of his ward's estate for her support and maintenance, and after the death of Joseph C. Greening the administrator of his estate, under proper order, paid her an additional sum of $201.75.

She departed this life on February 10, 1901, leaving as her sole heirs at law the said children and grandchildren heretofore mentioned as the heirs at law of said Joseph C. Greening. The said Margaret J. Greening nor the administrator of her estate never received any assets of any character from her deceased husband's estate, except the $201.75 above mentioned.

At the date of the institution of this suit Thomas A. Greening was in the actual and exclusive possession

of the land sued for; and Everett Dooley was a minor, under twenty-one years of age, and John H. Dooley was his duly appointed and acting guardian and curator.

It was agreed that the value of the monthly rents and profits of the one hundred and sixty acres of land was $15.

I.   It will be seen from reading this record that Margaret J. Greening owned, in her own right, an estate in the land sued for, as well as her marital interest in that part of it which belonged to her husband, Joseph C. Greening.   There seems to be no controversy as to the effect of the curator's deed, it being conceded by respondent that it conveyed the entire interest of Joseph C. Greening in the premises to the appellant.   But the question presented for the consideration of the court is, did the quitclaim deed of Margaret J. Greening, dated March 27, 1899, convey the estate she owned in her own right as well as her marital interests in her husband's land.

The language of the deed is, I hereby convey "all of my right, title and interest whether dower or other interest *as the wife of* Joseph C. Greening . . . more or less, hereby conveying and intending to convey all interest I may have in said land whether of dower or otherwise."

The first clause of the paragraph above quoted states that she conveyed all her dower or other interest as the wife of Joseph C. Greening, while the latter states that she conveyed and intended to convey all her interest in said land whether of dower or otherwise.

At first blush there seems to be some ambiguity as to the real intention of the grantor, but when both clauses are read together, and in the light of the facts and circumstances surrounding the parties at the time of its execution, that uncertainty disappears.

The facts surrounding the parties at the time the deed was made were, substantially, as follows:

Joseph C. Greening was of unsound mind and confined in an insane asylum, with no means of support outside of his interest in the land in controversy. That unfortunate condition of Joseph C. Greening made it necessary for his curator to apply to the probate court for an order to sell his land, which was duly made, and the land was sold for the purpose of securing the necessary means for his support and maintenance. On the same day the order of sale was entered by the court, March 27, 1899, Margaret J. Greening, his wife, made and executed the quitclaim deed which is the subject of this controversy. And it should be borne in mind that it was Joseph C. Greening who was in distress and needy, not his wife, and that it was his land which was ordered sold, not hers, and we might add that there is not a word in this entire record regarding the sale or that she wanted to sell her real estate except what is found in this deed. That deed stands out separate and alone — nothing preceding or succeeding its execution to show why it was made except the relation it bears to the transactions had and deed executed by the curator of Joseph C. Greening. It also appears from this record that she was a very old lady, without means other than this land, and that she received no consideration whatever for executing the deed.

Looking at the language of the deed in the light of these facts, we are unable to say it was her intention to convey her own real estate. To do so would be equivalent to holding she deliberately, in her old age, without value received, with want and starvation staring her in the face, disposed of her all.

When the language of the deed is interpreted in the light of the facts above stated, the application of the rule of *ejusdem generis* seems to us to fully recon-

201 Sup—23

cile the apparent conflict of meaning between the two clauses of the deed below stated. The language is as follows:

First, "all of my right, title and interest whether dower or other interest as the wife of Joseph C. Greening," and second, "hereby conveying and intending to convey all interest I may have in said land whether dower or otherwise." The words in the first clause refer to a particlar interest or estate, namely, dower or other marital interest only, she owned in her husband's lands, while the second employs words which describe an interest and estate generally, without limitation; and by the application of the rule that where general words follow particular words, the general words in this deed must be construed so as to limit their meaning to the particular words or estate embraced in the first clause, which refer to marital rights only. [State v. Schuchmann, 133 Mo. 111.]

According to that principle of interpretation Margaret J. Greening only conveyed her dower and other marital interests to appellant by the deed mentioned.

II. The deed of Margaret J. Greening to appellant was wholly ineffectual to convey her own real estate for another reason.

The statute in such case as this provides:

"The wife of any man who is under guardianship may join with the guardian in making partition of her own real estate held in joint tenancy, or in common, and may, jointly with the guardian, make any release or other conveyance necessary and proper for that purpose; and she may sell and convey her own real estate by joining with the guardian in such sale and conveyance, to be under the order and supervision of the proper court, and deeds executed jointly by herself and such guardian shall have the same force and effect as if done with her husband if he had been under no disability; and in all cases where the real estate of such

husbrnd shall be sold by his guardian in due conformity to law, she may relinquish her right of dower in such real estate as fully as if her husband joined in the deed of release.'' [R. S. 1899, sec. 4334.]

It will be seen from reading the second clause of the above section that the wife of Joseph C. Greening could not have sold and conveyed her own real estate except under the order and supervision of the proper court, and by deed jointly executed by her and the guardian. In this case there is no pretense that any court ordered her to sell her own real estate, or that the guardian jointly executed the deed with her. Even though she had intended to sell and convey her own real estate by the deed then in evidence, no title would have been conveyed thereby, because it would have been absolutely void because not executed in conformity to the statute. This is also an additional reason for believing she never intended thereby to convey her own real estate.

The third clause of the same section of the statute is the one governing the conveyance of the husband's real estate while under guardianship; and it provides that his wife may release her dower interest therein, but it does not state the manner of making the release, nor the kind of deed required to be executed for that purpose. And as it does not require her to join the guardian in the execution of the deed of conveyance, it must have been the intention of the Legislature to leave it to her to choose any instrument which would be appropriate to accomplish that purpose.

The quit-claim deed of Margaret J. Greening was evidently executed in pursuance to the authority of that clause of the statute, and it is effectual in conveying all her marital interests in her husband's real estate and nothing more to appellant.

And when we examine the language of the deed in the light of this statute and in view of the object she

and the curator had in view, the sale of his real estate for his support and maintenance, the intent of the parties to the deed is made clear. In order to secure the reasonable value of the land it was necessary for her to relinquish her dower, which she did by the execution and delivery of the deed of release herein mentioned.

It was neither the intention of Margaret J. Greening to dispose of her own real estate, nor did the deed of release have the effect to convey her said real estate.

It follows, from what has here been stated, that the trial court was correct in its holding, that the respondent was entitled to recover; but it committed error in rendering judgment for respondent for the entire one hundred and sixty acres of land sued for.

The record is not quite clear as to the nature and exact amount of the interest respondent has in each of the tracts of land described, and because of that, this court cannot safely enter up judgment here in his favor, and for that reason the judgment is reversed and cause remanded, with directions to the circuit court to ascertain the interest of respondent in each tract of land described in the petition, and to enter up judgment in his favor therefor, and to assess the amount of damage he is entitled to, and to fix the monthly value of the rents and profits on his portion of the land.

All concur.