Danciger v. Stone.

FANNIE DANCIGER, PARK PLAZA REALTY COMPANY et al. v. JENNIE STONE and ERNEST S. BENNETT, Appellants.

Division One, April 7, 1919.

1. **CONVEYANCE: Deed by Husband and Wife of Undivided Half: Cotenants in Whole.** Where the wife was the owner of an undivided half interest in land, by inheritance, and her husband

was the owner of the other undivided half, by purchase, a joint deed made by them in 1856 by which they conveyed "the undivided one-half" of the tract, the wife being under common law disability and the husband under no disability, must be held to have conveyed the husband's half interest, unless the instrument itself shows the performance of every act on her part necessary to convey her estate, or unless it is shown by evidence *aliunde* that it was the purpose, object and intent of the makers to convey only her undivided half interest.

2. ———: ———: Intention Shown by Deposition of Husband. That the purpose, object and intent of the husband and wife by a joint deed conveying an undivided half interest in land, in which each owned an undivided half interest, was to convey the wife's interest, cannot be shown by a deposition of the husband made after the wife's death. The wife being a party to the contract and being dead, such testimony is not competent under Section 6354, Revised Statutes 1909.

3. **LIMITATIONS: Land Subject to Curtesy.** The Statute of Limitations does not begin to run against the wife's heirs or their grantees until the death of the husband who had curtesy in her lands, or against his grantees, even though she had been dead fifty years or more at the time of his death. Until his death and his lifetime right to possession was thereby terminated, the remaindermen or reversioners could not maintain a possessory action against him or his grantees.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Strother & Campbell* for appellants.

(1) For construction of deed see Peter v. Byrne, 175 Mo. 243, 249; Dooley v. Greening, 210 Mo. 343; Linville v. Green, 165 Mo. 397; Hedrick v. Musgrove, 183 Mo. 300. (2) Parol evidence was not admissible. Weissenfels v. Cable, 208 Mo. 534; Johnson Co. v. Wood, 84 Mo. 515; Wolfe v. Dwyer, 95 Mo. 545; Rogers v. Raney, 137 Mo. 598. (3) Andrew J. Stone was not a competent witness. Herndon v. Yates, 194 S. W. 48; Leavea v. Railways Co., 266 Mo. 151; Eaton v. Cates, 175 S. W. 953; Lieber v. Lieber, 239 Mo. 1; Smith v.

Smith, 201 Mo. 546; Bishop v. Investment Co., 229 Mo. 721; Patton v. Fox, 169 Mo. 107; Curd v. Brown, 148 Mo. 95; Miller v. Slupsky, 158 Mo. 646; Johnston v. Johnston, 173 Mo. 120; Lins v. Lenhardt, 127 Mo. 290; Powell v. Sherwood, 242 Mo. 540; Allen v. Morris, 244 Mo. 362; Dunlap v. Griffith, 146 Mo. 294. (4) There was no adverse possession. Herndon v. Yates, 194 S. W. 48; Armor v. Frey, 253 Mo. 474; Coulson v. La-Plant, 196 S. W. 1147; Hall v. French, 165 Mo. 442; Bradley v. Goff, 243 Mo. 95; Hauser v. Murray, 256 Mo. 58.

*Harry L. Jacobs, M. L. Friedman, Ringolsky & Friedman* and *I. J. Ringolsky* for respondents.

(1) Parol evidence is admissible to explain terms of deed where same is defective on account of latent ambiguity. Hardy v. Mathews, 38 Mo. 121; Blumenthal v. Blumenthal, 251 Mo. 704; Mudd v. Dillon, 166 Mo. 110; Hubbard v. Whitehead, 221 Mo. 672; Johnson Co. v. Wood, 84 Mo. 515; Hauser v. Murray, 165 S. W. 376. (2) A life tenant and tenant in common can obtain title by adverse possession. Chouteau v. Riddle, 110 Mo. 366; Meddis v. Kenney, 176 Mo. 200; Null v. Howell, 111 Mo. 273; Acord v. Beaty, 148 S. W. 901; DeHatre v. Edmonds, 200 Mo. 246; Watson v. Payne, 143 Mo. App. 721; American Colonization Society v. Soulsay, L. R. A. 1917, 943; Golden v. Tyer, 180 Mo. 202; Stricklin v. Moore, 151 S. W. (Ark.) 1009. (3) Andrew J. Stone was a competent witness to testify to all facts occurring at the time the deed in 1856 was made, except to contracts made with his wife, conversations with his wife and intentions of his wife in making the deed. He surely was competent to testify to facts which occurred after the death of his wife. Kille v. Gooch, 184 S. W. 1158; Ray v. Westfall, 183 S. W. 629; Griffin v. Nicholas, 224 Mo. 275; Stanton v. Ryan, 41 Mo. 514; Freeland v. Williamson, 220 Mo. 231; Weiermueller v. Scullin, 203 Mo. 473; Hoyt v. Davis & Herron, 30 Mo. App. 313; Spence

v. Spence, 238 Mo. 77; Golden v. Tyer, 180 Mo. 196; Wagner v. Bender, 187 S. W. 1157; Bajohr v. Bajohr, 184 S. W. 76; Graham v. Wilson, 168 Mo. App. 188; Griffin v. Nicholas, 224 Mo. 275; Heynbrock v. Hormann, 164 S. W. 547; Martin v. Bonsack, 61 Mo. 566; Dunlap v. Griffith, 146 Mo. 294; Weissenfels v. Cable, 208 Mo. 534; Carter v. Foster, 145 Mo. 392; Warne v. Sorge, 167 S. W. 969; Chambers v. Chambers, 227 Mo. 282.

BOND, C. J.—Suit for an undivided one-half of a certain fifty-six and one-half acres of land in Jackson County, Missouri.

In 1849 one Archibald Rice conveyed by warranty deed to each of his two daughters, Manerva R. Rice and Mary Ann Franklin, an undivided one-half interest in certain land in Jackson County, including the fifty-six and one-half acres in dispute. Manerva Rice later became the wife of Andrew J. Stone, who purchased the half interest of Mary Ann Franklin (afterwards Mary Ann Ish) in all the land deeded to her by her father, so that in 1853 Manerva Stone and her husband Andrew J. Stone each owned, in their own right, an undivided one-half interest in the fifty-six and one-half acres in question.

On April 14, 1856, Andrew J. Stone and his wife, Manerva Stone, sold certain lands containing three hundred and forty-nine and one-half acres to William S. Stone, including an undivided one-half interest in the said fifty-six and one-half acres, describing the latter parcel to-wit:

"Also the undivided one-half of the south end of the east one-half of the northeast quarter of Section 2. Township 48, in Range 33, containing fifty-six acres and a half, the one-half of which hereby sold is 28¼ acres, and containing in the aggregate hereby sold and conveyed, 349½ acres more or less, and being the same land deeded by Archibald Rice and wife to Mary Ann Franklin (now Mary Ann Ish, the wife of John H. Ish) and Manerva R. Rice (now Manerva R. Stone, wife of the

said Andrew J. Stone and one of the grantees herein)
on the 22 day of March, 1849; and the undivided half
of said land was deeded by John H. Ish and wife afore-
said to said Andrew J. Stone on the 17 day of May, 1853,
both of which deeds are now of record in the Recorder's
office of Jackson County and State of Missouri, ref-
erence to said deeds being hereby had."

The controversy in this case grew out of the con-
struction to be placed on the above deed, the plaintiffs
on the one hand claiming it conveyed the half interest
of Manerva Stone, while the defendants insist it con-
veyed the half interest of the husband, Andrew J.
Stone.

Manerva Stone died in the year 1857, leaving four
children, Juilet, Sallie, William and Jacob. William
Stone died in 1895, leaving as his only heir his widow,
Jennie Stone, one of the defendants herein. Jacob Stone
died in 1888. His estate was not administered until 1905,
when letters testamentary were granted and in the
course of administration the administrator sold Jacob
Stone's alleged one-quarter interest in an undivided
one-half of the fifty-six and one-half acres in dispute
to defendant Bennett for $75, said Bennett acting as
attorney for Frank H. Gattrell, the real purchaser.

The other two children of Manerva Stone, Juliet
and Sallie, each quit-claimed their interests, if any, in
the disputed tract to the plaintiff, the Park Plaza Realty
Company.

It also appears of record that on January 17, 1867,
Andrew J. Stone and his *second* wife, Julia, conveyed to
William S. Stone, an undivided "one-half of the fol-
lowing tracts or parcels of land," among which was the
disputed parcel of "56½ acres off the south end of the
east half of the northeast quarter of Section 2, Town-
ship 48, Range 33." William S. Stone took possession of
the land and he and his grantees have continued in
actual possession thereof until this controversy arose.

In the first instance three suits were instituted;
one by the Kansas Western Co-Operative Company

against Jennie Stone and others; another a partition suit by Jennie Stone, and the third by Fannie Danciger, who acquired title from the Kansas Western Co-Operative Company, against Jennie Stone, Ernest Bennett and others, all of which were, by consent, consolidated and tried as one, the Park Plaza Realty Company being substituted as plaintiff in two of the suits and substituted as defendant in the partition suit.

At the trial plaintiff introduced in evidence an affidavit of Andrew J. Stone, which was read, attached to and made a part of his deposition, a pertinent clause to the dispute in hand being as follows:

"That . . . on which date (April 14, 1856) affiant and his wife sold an undivided one-half interest in said land to affiant's brother, William S. Stone, (said one-half interest being the one-half interest belonging to said affiant's wife at the time of her marriage)."

A decree was entered in favor of the substituted plaintiff, the Park Plaza Realty Company, in which the court found that is was the intention of both of the grantors by their deeds, to convey the undivided one-half interest in the fifty-six and one-half acres in controversy owned by Manerva R. Stone, individually, and not the intention of the grantors to convey, or of the grantee to accept, the undivided half interest in said land owned by the grantor, Andrew J. Stone, individually. The court further found in favor of the Park Plaza Realty Company as substituted defendant in the partition suit wherein Jennie Stone was plaintiff, and dismissed her petition. The court also found that the Park Plaza Realty Company and its predecessors and those through whom it deraigned title had, from April 14, 1856, been in "open, notorious, visible, actual, continuous, adverse possession" of the land in controversy, and that said Park Plaza Realty Company "is the owner in fee simple, and is now in possession of said above described land," and that none of the defendants, naming them, "have any interest in or right

of title to said real estate described heretofore herein
or any part of same."

From judgment entered in accordance with this de-
cree, Jennie Stone and Ernest Bennett appealed.

I. It may be conceded that the terms of the deed do
not render it absolutely certain whether it was the
intention of the grantors therein to convey the undivid-
ed half interest of the wife or the undivided half in-
terest which the husband acquired by purchase
**Interest Conveyed.** from her sister in the fifty-six and one-half
acres in dispute, since the operative words of
the deed do not specify, in express terms, which of the
two undivided half interests were intended to be con-
veyed. The deed was made by the two co-owners in the
form of a warranty and the grantee therein was the
brother of the husband. At the time of its execution
(1856) the wife was under common law disability. The
husband was under no disability. In such circumstances,
with the view of protecting her rights, the law requires
that the instrument should show the "performance of
every act on her part necessary to convey her estate."
[Peter v. Byrne, 175 Mo. 233; Dooley v. Greening, 201
Mo. 343; Linville v. Greer, 165 Mo. l. c. 397.] Hence
there was no presumption afforded by the language
of the deed that it was intended by the wife's joinder
therein to convey her undivided one-half interest in the
land in dispute, rather than the undivided half interest
in the same which her husband then owned and had ac-
quired (as recited in the deed) from her sister. Unless,
therefore, the respondents have shown in the record by
evidence *aliunde* that it was the purpose and object
and intent of the makers of the deed to convey thereby
only the undivided half interest belonging to the wife,
or that by some other method title was vested in those
under whom respondents claim, defendants should have
had a decree in the court below.

The respondents endeavored to show this in two
ways: first by the deposition of the husband, taken
after the death of his wife and the death of their gran-

tee, who stated, in substance, that it was the intention of himself and wife to convey only her undivided half interest by the terms of the deed made by them; second, that respondents became vested with the title to the land under the Statute of Limitations of ten and thirty years.

Taking these in the order presented, the testimony of the husband in the form of a deposition given in 1911, forty-four years after the death of the wife, **Incompetent Testimony.** as to the effect of their joint contract in making the deed, was clearly inadmissible under the statute. [R. S. 1909, sec. 6354.] The pertinent parts of that statute are, to-wit: "Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him," etc.

In construing this statute upon an issue presented by claimants to land under title emanating from the husband, against other parties claiming through the wife, on the theory that the husband was the trustee of a resulting trust in her favor, FARIS, J., said: "Is Lutes, under such circumstances, a competent witness by whom to show any fact which goes to dispute the validity of the title conveyed to his wife? We think not and we think the cases, as well as the statute, so hold, in cases like the present in no doubtful terms.' [Herndon v. Yates, 194 S. W. l. c. 48.] To the same effect: Smith v. Smith, 201 Mo. l. c. 546; Patton v. Fox, 169 Mo. l. c. 107; Johnston v. Johnston, 173 Mo. 121; Lins v. Lenhardt, 127 Mo. l. c. 290; Miller v. Slupsky, 158 Mo. l. c. 646.

Our conclusion is that the testimony of the husband was not competent in the circumstances shown in this record, to prove that the deed executed by him and his wife was intended only to convey her and not his undivided half interest in the land in dispute. Defendants

offered no other testimony bearing on the intent of the parties, so that all that is left them in this case is their claim of title under the Statute of Limitations.

II. This being an action to try title to the land in question between the heirs of the wife and those representing them, and defendants who claim under the grantee in the joint deed of the husband and wife, upon the theory that said deed carried only the wife's undivided half interest in the fifty-six and one-half acres, and the record showing beyond dispute that the husband died in 1912, only a few years before the institution of this action, and was entitled to estate for life by the curtesy, in the land in question, it is clear that the parties who obtained that title from him were enitled to possession of the premises until his death, and that prior to that time no Statute of Limitations ran against the remaindermen. Cases exactly in point are: Coulson v. La Plant, 196 S. W. l. c. 1147, par. 4, 5, and 6, where GRAVES, J., speaking for Division One of this court, said, in referring to claims of remaindermen or reversioners: "They would have no right to possession until the death of the life tenant. The grantee of the widow could defeat any possessory action which they brought showing the life estate. That they had no possessory right of action during the life of the tenant has long since been determined," citing and quoting the case law. To the same effect: Armor v. Frey, 253 Mo. l. c. 474; Hall v. French, 105 Mo. l. c. 442; Bradley v. Goff, 243 Mo. 95; Hauser v. Murray, 256 Mo. l. c. 87.

It follows that the judgment in this case, quieting the title in the parties who claimed under deeds from the grantee in the joint deed of the husband and wife, was erroneous. It is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion. All concur.