PORTER MATHEWS v. RICHARD M. O'DONNELL and MICHAEL H. O'DONNELL, Appellants.

Division Two, July 19, 1921.

1. **CONVEYANCE:** Acknowledgment of Married Woman: Statute of 1855. Where the statute (R. S. 1855, ch. 32, sec. 39, p. 363) required that the certificate of acknowledgment of a married woman shall set forth "that she executed the same freely and without compulsion or undue influence of her husband," a certificate resiting that the married women "executed and delivered the said deed freely and without compulsion of their said respective husbands" is sufficient, without using the words "undue influence." The statute

Mathews v. O'Donnell.

requires no more than a substantial compliance with its terms, and is satisfied if the free and unconstrained consent of the wife to the deed is obtained.

2. ———: Description: Reference to Grantor's Deed. A conveyance by two married women and their husbands of "our undivided interest in a fractional piece of land deeded to us" by their grantor, "it being a part of the S. W. ½ of the S. W. of Sec. 5, Twp. 50, Range 29," is a sufficient description, if the description of the land "deeded" to them by their grantor is sufficient. The office of a description is not to identify the land, but to afford the means of identifying it, and when this is done the description is sufficient. Where the grantors convey land deeded to them by a certain grantor and his deed to them had identified the tract, the description is sufficient.

3. ———: ———: Undivided Interest: Exclusive Possession of Grantee. Where land had been conveyed to two married women, and they and their husbands conveyed "our undivided interests" therein, the meaning is clear enough. Especially where the grantee took and retained exclusive possession of the tract conveyed, for this itself cured any defect in the description.

4. ———: To Woman and Her Children: Fee or Remainder: Cotenancy: Settlement. A deed conveying certain land to "F. A. D. Mathews and all her children she has now or ever may have," with the *habendum* reading: "To have and to hold the same unto the said F. A. D. Mathews and her children as aforesaid and their heirs, but it is to be distinctly understood if the said F. A. D. Mathews may hereafter conclude to sell the above tract of land she is hereby empowered and authorized to do so by arranging it so that the proceeds of said land is to be laid out for other lands or property to be conveyed so as to put the right of title in the said F. A. D. Mathews and her children," did not convey the fee to said F. A. D. Mathews, but only a vendable life estate, with re- mainder in fee in her children, born and unborn. She and her children were not made tenants in common, for it is clear that the grantor did not intend that the children should take a present interest, for he does not name them, and says "all her children she has now, or may ever have;" but the grant, when read in con- nection with the *habendum*, manifests a settlement, with a life estate to the mother and the remainder in fee to her children.

5. TAXES: Payment: Duty of Life Tenant: Duty of Life Tenant's Grantee. The payment of taxes upon improved and productive land is a charge upon the life estate, and it is the duty of the owner of such estate, whether the life tenant or his grantee be the owner, to pay the taxes and protect the interest of the remainder- men.

Mathews v. O'Donnell.

6. **TAX SALE: Deed to Life Tenant.** The purchase of land at its sale for taxes, by the life tenant or by the life tenant's grantee, inures to the benefit of the remaindermen, and operates only as a payment of the taxes. Such purchaser occupies a fiduciary relation to the remaindermen, and is bound to exercise every reasonable precaution to preserve the property intact for transmission to them upon the termination of the life estate.

7. ———: ———: Future Disposition: Purchaser With Notice: Deliberate Plan to Defraud Remaindermen. Not only the life tenant who purchases land at a tax sale, but all persons who take title from him with notice of his violation of his fiduciary relation to the remaindermen, are trustees *ex maleficio;* and the record of title showing he had only a life estate is constructive notice to his grantee, and the tax deed informs such grantee that the life tenant had suffered the land to be sold for delinquent taxes which the law required him to pay. But the facts of this case show actual notice, and also a deliberate plan to deprive the remaindermen of their estate, by suit and sale for taxes.

8. **CONVEYANCE: Purchase from Fraudulent Grantor: Notice: Failure to Testify.** The burden of proving a bona-fide purchase from a fraudulent grantor is on the party pleading it, and to support the plea he must prove that he bought without notice, and paid the purchase money without notice. And failure of such purchaser to testify creates an inference that he refrained because the truth would not aid his contention, and of itself affords strong evidence of the fraud.

9. ———: **Married Woman's Deed: After-Acquired Interest.** Under the statute of 1855 (R. S. 1855, sec. 36, ch. 32, p. 363) the deed of a married woman who owned only a life interest in land did not pass her interests subsequently inherited from the remaindermen. Prior to the Married Woman's Act of 1889, only whatever interest a married woman had at the time was conveyed by her deed, whatever its form.

10. **LIMITATIONS: Life Estate: Trustees Ex Maleficio.** Remaindermen cannot come into court and recover possession of land before the termination of the life estate, and no statute of limitations, that for thirty years or any other, begins to run against them until the life estate is determined by the death of the life tenant. And where the purchaser from the life tenant is a grantee with notice and a trustee *ex maleficio,* the statute does not run in his favor.

11. **TAX SALE: Surplus Money Paid to Life Tenant: Order of Court: Estoppel.** Where the life tenant, occupying a fiduciary relation to the remaindermen and under obligation to protect their estate,

caused or allowed a· suit for taxes to be instituted for the purpose of covinously defeating their title, his motion, sustained by the court, directing the sheriff to pay over to him the surplus money in his hands arising from the tax sale, will not estop them from claiming title. Such payment bars a renewal of any claim to the surplus fund, but it was not *res adjudicata* as to the remainder-men's title.

## Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*Henry Lamm, John I. Williamson* and *A. N. Gossett* for appellants.

.(1) The sheriff's deed in the suit and under the judgment for the taxes and enforcing the lien thereof and the proceedings in such suit are regular and sufficient and are so predicated and recognized in the allegation of plaintiff's petitions, and conveyed to Matilda Kinney in such suit against all parties who could possibly be interested in the land including the present plaintiff and J. B. Kinney, who were personally served with summons therein. This placed upon the plaintiff the burden of showing and proving that the purchase by Matilda Kinney was not with her own money and for herself. Defendants afterwards acquired her title as innocent purchasers, through Joseph B. Kinney, who acquired by the mortgagee's sale all the land, and through Matilda Kinney, who acquired by the sheriff's tax judgment sale, Tract A and west eight acres of Tract B. This is a question of fact and was decided against the defendants in the court below against and contrary to the evidence as to whether Matilda Kinney was a mere straw representative of her son J. B. Kinney, purchaser at the mortgagee's sale. (a) Even if the purchase by Matilda Kinney was with the money of Joseph Kinney and for his use and benefit, or, even if Joseph B. Kinney purchased for the use and benefit of his

father, Joseph Kinney, the mortgagee (although there is no proof that either is so), and even if the purchase by Matilda Kinney was with the money for the use and benefit (also not proven) of Joseph B. Kinney, the purchaser at the mortgagee's sale, yet neither of these parties were under any obligation or duty as to Mrs. Mathews or any of her children to pay these taxes and hence such purchase at the Sheriff's sale cannot be considered the performance of any such duty or obligation. For the reasons: (b) Neither of the Kinneys was in possession of the land while these taxes from 1869 to 1878 were accruing. The case of Kinney v. Mathews, 69 Mo. 520, shows that the ejectment suit for possession was pending as late as April, 1879, and no writ could have been issued therein, and the testimony shows that James P. Mathews, the defendant in that ejectment suit, was in possession of the land and was not ousted, whether under a writ in that case or otherwise, until the year 1881. The tax suit was commenced February 4, 1880. There is no duty to pay taxes on a mortgagee of a life estate or a purchaser under such mortgage owing to the remainderman while such mortgagee or purchaser under him is not in possession and obtaining the fruits of the land. Atkinson v. Dickson, 89 Mo. 464; Gaskins v. Blake, 27 Miss. 675; Lacy v. Davis, 4 Mich. 140; Barrett v. Amrein, 36 Cal. 322; Cox v. Gibson, 27 Pa. St. 160; Wright v. Sperry, 21 Wis. 331, 25 Wis. 617; Pickering v. Lomax, 120 Ill. 289; Waterson v. Devoe, 18 Kan. 223; Williams v. Townsend, 31 N. Y. 411. (c) Mrs. Mathews was not a life tenant, nor was the mortgagee or purchaser at the mortgage sale a life tenant, for the reasons that any of the three instruments to Mrs. Mathews and her children born and to be born which conveyed any title, did not vest in her only a life estate, but did, insofar as they conveyed any title, give her either an estate in fee simple or an estate in common with her children then living, or to her and her children born and unborn, the estate

opening to let in children born after the delivery of such instruments, and all these children, including the plaintiff as tenants in common under the proof in this case, are long since barred by limitation. (d) Also, for the reason that Tract A was owned by Mrs. Mathews and Mrs. Cushenbury by conveyance to them from Roy, and was never conveyed to their father, Cogswell, by them, and hence the instrument purporting to be such deed to her and her children from Cogswell and wife, conveyed no title. This negatives the life estate idea as to this Tract A, and defendants through the mortgage and sale thereunder have acquired, as against Mrs. Mathews, under her mortgage, her fee simple title to a half interest derived from Roy, and by the Statute of Limitations and rule of laches against Mrs. Cushenbury her title to an entire half interest derived from Roy. If Mrs. Cushenbury's title is not so barred, that does not help out plaintiff. (2) The surplus proceeds of the sheriff's sale were properly adjudicated to Joseph B. Kinney in full, thereby establishing his previous ownership in fee simple to all the land, on his motion proper therefor. Notice of this motion was personally served on Mr. and Mrs. Mathews and two of the three then surviving children, Andrew R. and Mary E., and constructively on the other of such three surviving children, Porter H., plaintiff here. They were all the adults. At the trial of the case now before this court plaintiff himself offered in evidence these proceedings, defendants' answer alleging this fact as an estoppel. Moran v. Getchell, 97 Mo. 134. In Missouri, the tax lien foreclosure requires sale of the land itself as against all parties defendant. Getchell v. Kriedler, 84 Mo. 472; Myers v. Bassett, 84 Mo. 479; Allen v. McCabe, 94 Mo. 148; Williams v. Hudson, 93 Mo. 524. Therefore such adjudication of surplus proceeds is *res adjudicata* and a judgment concluding in any other suit between the same parties the ownership of the land which carried the right to such surplus proceeds, viz., adjudication of the

fee simple title to the lands from which they were made and represent, converted into money by the court. Moran v. Getchel, 97 Mo. 134; Murphy v. DeFrance, 101 Mo. 151; Gibbs v. Southern, 116 Mo. 204; Ketchum v. Christian, 128 Mo. 38; Donnell v. Wright, 147 Mo. 639. (3) The case of Kinney v. Mathews, 69 Mo. 520, was properly brought by Kinney against James P. Mathews alone. He was the head of the family and at that time was entitled to the possession even if his wife had only a life estate; and likewise if she had the fee simple; and likewise as to her interest if she was a tenant in common with her children. He was the head of the family and in possession, and the only person denying such possession to Kinney, in that case, hence he was the only proper or necessary and was in fact the only defendant in that case. The report of this case was offered in evidence. It was therefore only necessary for the Supreme Court in that case to adjudge, and the only proposition covered by its judgment, was whether or not Kinney was entitled to the possession of the land against the sole defendant therein, and such proposition was decided by the Supreme Court to the effect that Kinney was entitled to such possession against such defendant. This was the gist and only matter decided or adjudged in that case, the other expressions and language in the opinion (which in the majority opinion is uncertain as to whether the instruments there in question vested in Mrs. Mathews a fee-tail with remainder to whomsoever at her death might be the heir or heirs of her body, actually turning out to be the respondent herein, or whether she took a life estate with remainder to her children) are wholly *dehors* to and beside the case, mere *obiter dicta,* and are not at all binding in the instant case or appeal. It is clear that such instruments as to such titles as they may have conveyed were not in such *obiter* remarks correctly interpreted, for the reason that clearly under the overwhelming weight of authorities such deeds conveyed

289 Mo.—16

whatever title they did convey to Mrs. Mathews, either in fee simple for the entire estate, or else as tenant in common with her children in fee simple. We use the language "whatever title they may have conveyed" as to such instruments, for that we wish the court not to lose sight of our position that as to Tract A the deed from Cogswell to Mrs. Mathews and Mrs. Cushenbury conveyed nothing. The defendants' title thereto harks back to the fee simple estate conveyed by Roy to those two women, as well as being based upon the sheriff's deed in the tax suit, and also upon the propositions that, as to all the land actually conveyed, Mrs. Mathews took either the entire estate in fee simple or else as tenant in common with her children. The husband was the only proper defendant in this ejectment case, before enactment of Sec. 6868, R. S. 1889. Flesh v. Lindsay, 115 Mo. 1, 13; Evans v. Kunze, 128 Mo. 670, 679; Hall v. French, 165 Mo. 340; Graham v. Ketchum, 192 Mo. 115; Dilberger v. Wrisberg, 10 Mo. App. 465; Getchell v. Messmer, 14 Mo. App. 83. (4) The omission of the words "or undue influence" necessary under the statute then in force to be stated by the officer in the certificate of acknowledgment to the instrument purporting to be a deed from Mrs. Cushenbury and husband and Mrs. Mathews and husband to William Cogswell, rendered such instrument futile and void as a deed. So that it passed no title to William Cogswell for this Tract A, being originally the 38.93 acres in S. W. fractional ¼ of Section 5. The evidence shows conclusively the land was patented to and owned by Joseph Roy, who on Aug. 21, 1847, conveyed the same in fee simple to Mrs. Cushenbury, then Robinson, and to Mrs. Mathews, then Cogswell. Therefore they so owned this land and the attempted deed to Cogswell by them, conveyed nothing and Cogswell's deed to Mrs. Mathews and her children did not affect the title to this tract of the lands in question. The fee simple title has passed to the defendants through the mortgagees' sale, reinforced by the

sheriff's tax sale and deeds thereunder, and by the Statute of Limitations and the rule of laches. Secs. 38 and 39, ch. 32, p. 363, R. S. 1855; Chauvin v. Wagner, 18 Mo. 531; Rogers v. Woody, 23 Mo. 548; Wannell v. Kem, 57 Mo. 482; Krieger v. Crocker, 118 Mo. 531; Sarazin v. Railway Co., 153 Mo. 479; Powell v. Bowen, 297 Mo. 288; Bennett v. Ward, 272 Mo. 680; Dingman v. Romaine, 141 Mo. 466. This instrument, Mathews and Cushenbury to Cogswell, is also void for insufficiency and lack of description as to Tract A. Clements v. Randall, 34 Mo. 579; Holme v. Strantham, 35 Mo. 293; Jones· v. Carter, 56 Mo. 403. (5) The record and evidence in this case shows conclusively that Mary E. O'Donnell and the four O'Donnell brothers and the two of them who are defendants have successively been in the exclusive, continuous, open, notorious, uninterrupted and visible possession of this land since the latter part of 1882, claiming to own the same against the entire world, and especially against the plaintiff and those under whom he claims, and unless Mrs. Mathews (who died in 1915) by the instruments in question had only a life estate in the land, and unless Joseph B. Kinney never had any more than a life estate in the land, then all possible title and estate of the plaintiff has long since been barred by the Statute of Limitations. Every claimant adverse to the O'Donnells was *sui juris,* from the time they became adults except Mrs. Mathews, and she from 1898. Warfield v. Lindell, 38 Mo. 561; LaPeyre v. Paul, 47 Mo. 586; Long v. Stapp, 49 Mo. 506; Miller v. Bledsoe, 61 Mo. 96, confirmed at pp. 248 and 444; Miller v. Early, 64 Mo. 478; Hutson v. Hutson, 139 Mo. 229; Whitaker v. Whitaker, 157 Mo. 342; Boyce v. Ry. Co., 168 Mo. 593; Hendrix v. Musgrove, 183 Mo. 300. (6) Even if the defendants' title depended solely upon the three instruments reading substantially in the granting clause "to the said Fanny D. Mathews and all her children she has now or will have" and in the *habendum* clause reading "to have and to hold the same unto

the said Fanny A. D. Mathews and her children as afore-
said and their heirs," the defendants still have good
fee simple title as against the plaintiff. (a) Such
deeds conveyed the fee simple title to Mrs. Mathews.
Rines v. Mansfield, 96 Mo. 394; Tygard v. Hartwell, 204
Mo. 200; Judge Henry's dissenting opinion, Kinny v.
Mathews, 69 Mo. 528. The intent to cut down what ap-
pears an absolute grant or devise must appear in the
plainest language before such intent can take effect.
The so-called power of sale to Mrs. Mathews in these
instruments is not at all inconsistent with the fee sim-
ple estate created either entire or as tenant in common.
English v. Bechle, 32 Mo. 186; Lemp v. Lemp, 264 Mo.
533. (b) If such deeds did not convey the fee simple
title to her, they clearly at least conveyed the fee sim-
ple estate to her and her children born, or to her and
them and those then yet to be born as tenants in com-
mon, the estate opening to let in each unborn child,
and such deeds as were effective did not convey, at all
events, merely a life estate to Mrs. Mathews. Hamil-
ton v. Pitcher, 53 Mo. 334; Allen v. Claybrook, 58 Mo.
124; Hall v. Stevens, 65 Mo. 670; Waddell v. Waddell, 99
Mo. 338; Dietz v. Siebert, 157 Mo. 257; Doerner v. Doern-
er, 161 Mo. 399; O'Day v. Meadows, 194 Mo. 588; Buck-
ner v. Buckner, 255 Mo. 371, 377; Barkhoefer v. Barkhoe-
fer, 204 S. W. 906; Sec. 9, ch. 32, p. 356, R. S. 1855; Sec.
2271, R. S. 1919; Oates v. Jackson, 2 Strange, 1174; Ma-
son v. Clark, 17 Beav. 131; Wildes Case, 2 Coke, 17, 3
Coke, pr. 6, 17; Nimmo v. Stewart, 21 Ala. 682; Moore
v. Lee, 105 Ala. 493; Est. of Daniel Utz, 43 Cal. 200;
Pierce v. Brooks, 42 Ga. 425; Jackson v. Coggin, 29 Ga.
403; Loyless v. Blackshear, 43 Ga. 327; Plant v. Plant,
122 Ga. 763; Faloon v. Simhouser, 130 Ill. 649; Gill v.
Logan, 50 Ky. 231; Bullock v. Caldwell, 81 Ky. 566;
Bradham v. Day, 75 Miss. 923; Millecamp v. Millecamp,
25 S. C. 125; Sease v. Sease, 64 S. C. 216; Reeves v.
Cook, 71 S. C. 275; Wallace v. Hodges, 160 Ala. 276;
Stiles v. Cummings, 122 Ga. 635; Hancock v. Martin, 147
Ga. 828; King v. Rea, 56 Ind. 1; Chenery v. Stevens, 97

Mass. 77; Dorden v. Timberlake, 139 N. C. 181; Cullens v. Cullens, 161 N. C. 344.  (c)  The statute in effect at that time, as now, authorized the granting of an estate to commence *in futuro* either by will or deed.  As to the then living children, they could take as tenants in common beyond question, and as to those to be born, the estate could be created to commence *in futuro,* the mother and other children taking the entire estate with the quality of opening to let in the after born children.  This statute seems to have been overlooked in the case of Kinney v. Mathews, 69 Mo. 520.  Sec. 9, ch. 32, p. 356, Vol. 1, R. S. 1855; Sec. 4596, R. S. 1899; Sec. 2876, R. S. 1909 Sec. 4596, R. S. 1899; Sec. 2271, R. S. 1919; O'Day v. Meadows, 194 Mo. 588; Buxton v. Krueger, 219 Mo. 225. (d)  The decision in Kinney v. Mathews, 69 Mo. 520, is not the law of the present case.  It was an action of ejectment.  It is not the same case or appeal in the same case.  The facts are different.  Buxton v. Krueger, 219 Mo. 239; State ex rel. v. Eastin, 270 Mo. 209.  (1)  The mortgage from Mrs. Mathews, joined in by her husband, to Joseph Kinney, dated July 14, 1866, as to any of these lands of which she owned the entire fee simple estate, passed that title, and as to any of it she owned in only an undivided interest as tenant in common or by inheritance from her then deceased children, such mortgage passed that title, beyond question. And as to any interest she may have inherited from her subsequently deceased children, such mortgage passed that title, notwithstanding the statute then in effect providing that covenants of warranty should not be binding upon a married woman.  Such after acquired title would pass by virtue of a different statute likewise then in effect providing that if any person should convey lands by a deed purporting to convey a greater estate than the grantor then owned, any title which the grantor might thereafter acquire would inure to the benefit of the grantee and pass by virtue of such deed to the grantee.  Sec. 36, ch. 32, p. 363, R. S. 1855;

Sec. 2788, R. S. 1909; Sec. 2175, R. S. 1919; Sec. 3, ch. 32, p. 355, R. S. 1855; Sec. 3940, R. S. 1879; Sec. 8835, R. S. 1899; Sec. 4591, R. S. 1899; Sec. 2871, R. S. 1909; Sec. 2266, R. S. 1919; Evens v. Labadie, 10 Mo. 430; Ivy v. Yancy, 129 Mo. 509; Contra Bradford v. Wolf, 103 Mo. 391; Hendrix v. Musgrove, 183 Mo. 300. That one action of ejectment and judgment is not *res adjudicata* in another action of ejectment or in a real action for determination of title, although the title, parties and facts are exactly the same. In addition to cases cited, the following are in point: Dunn v. Miller, 75 Mo. 620; Spencer y. O'Neill, 100 Mo. 49; Speed v. Railway Co., 163 Mo. 122. Except in cases where an equitable title count is set up preliminary to an ejectment count in same suit, or equitable title set up in defense and adjudicated, in which case the decree and judgment are equivalent to a decree on a bill *quia timet* after two recoveries in ejectment. Sutton v. Donovan, 100 Mo. 141; Bailey v. Winn, 101 Mo. 649; Swope v. Walker, 119 Mo. 556.

*W. C. Hock* and *L. T. Dryden* for respondent.

(1)  The deeds in question, two from Wm. Cogswell and wife to their daughter, Fanny A. D. Mathews and all her children she has now or may ever have, and a similar deed to the same grantee from Celia F. Cushenbury and husband, conveyed a life estate to Fanny A. D. Mathews, with remainder to her children. Kinney v. Mathews, 69 Mo. 520; Tygard v. Hartwell, 204 Mo. 206; Garrett v. Wiltse, 252 Mo. 711; 13 Cyc. 685. (2) In construing a deed, the intention of parties should be ascertained and carried into effect. 18 Corpus Juris, p. 252, and p. 305, sec. 283; Eckle v. Ryland, 256 Mo. 424; Garrett v. Wiltse, 252 Mo. 699; Belch v. Miller, 32 Mo. App. 387; 17 Am. & Eng. Ency. Law (2 Ed.) 21; Warne v. Sorge, 170 Mo. 167. (3)  The trial court correctly

held the tax deed in question void. Black on Tax Deeds, p. 337, sec. 273; Peak, v. Peak, 228 Mo. 536, 552; Blair v. Johnson, 215 Ill. 552; First Congregational Church v. Terry, 130 Iowa, 513; Connecticut Mutual Life Ins. Co. v. Smith, 117 Mo. 261, 292; Sec. 2810, R. S. 1909; Pruitt v. Hally, 73 Ala. 369; Tiffany on Real Property (2 Ed.), p. 86; Olleman v. Kelgore, 52 Iowa, 38; Howell v. Jump, 140 Mo. 441; Wiswell v. Simmons, 77 Kan. 622; Phelan v. Boyland, 25 Wis. 679; Defreese v. Lake, 109 Mich. 679. (4) The deed from William Cogswell and wife and D. Cushenbury and wife to Fannie A. D. Mathews (Tract A) was good. (a) The description was sufficient. 18 Corpus Juris, pp. 291, 292, 180; Bollinger v. McDowell, 99 Mo. 632; Means v. LaVergne, 50 Mo. 343; Nelson v. Broadhack, 44 Mo. 596, 603; Clamorgan v. Beden, St. Louis Railroad Co., 72 Mo. 139; Whitwell v. Spiker, 238 Mo. 629. (b) The acknowledgment was a substantial compliance with the statutes and therefore good. Bohen v. Casey, 5 Mo. App. 101, 110; Ray v. Couch, 10 Mo. App. 324; Alexander v. Merry, 9 Mo. 514; Gross v. Watts, 206 Mo. 373; Huse v. Ames, 104 Mo. 91; Hughes v. McDivitt, 102 Mo. 77. (5) The respondent is not barred by the Statutes of Limitations or adverse possession. Hall v. French, 165 Mo. 430; Bone v. Tynell, 113 Mo. 182; Howell v. Jump, 140 Mo. 457; Danciger v. Stone, 278 Mo. 19, 27; Coulson v. La Plant, 196 S. W. 1147. (6) The interest inherited by respondent's mother from deceased children subsequent to the execution of the mortgage, did not pass under her warranty contained in the mortgage, she being a married woman and not bound by her warranty nor estoppel. Hendricks v. Musgrove, 183 Mo. 309; Ford v. Unity Church Society, 120 Mo. 498; Bradford v. Wolfe, 103 Mo. 391.

HIGBEE, P. J.—Appellants have summarized the pleadings and evidence substantially as follows:

This is an appeal from a decree of the circuit court in a suit to determine title to lands. The first count of

the amended petition was in ejectment, which plaintiff dismissed at the trial. The second count is in equity and alleges that plaintiff is the owner of the lands in question, consisting of three adjoining tracts; that defendants are in possession and claim title thereto against plaintiff. It particularly alleges that one Joseph B. Kinney, in 1871, became the owner of an estate therein for the life of Fannie A. D. Mathews, and as such owner it was his duty to pay the taxes on the land, but in violation of said duty, and with the intent of acquiring the estate of the owners of the remainder in fee of said property, neglected to pay said taxes and permitted them to become delinquent. Judgment was obtained by the State for said delinquent taxes, and sale made thereunder, and at such sale said Joseph B. Kinney bid in a part of these lands and caused a sheriff's deed thereto to be made to his mother Matilda Kinney, thereby attempting to acquire the remainder estates against plaintiff. The defendants claim ownership under deeds made by said Joseph B. Kinney and his mother, Matilda, and had knowledge before the execution of such deeds of "the facts and circumstances herein recited."

The prayer is that the court set aside and hold for naught said sheriff's deed, and to determine title, and for all proper relief, as provided by Section 1970, Revised Statutes 1919.

To the second count defendants answered, admitting possession and denying any ownership in plaintiff; admitting that Matilda Kinney acquired title to a part of the land by virtue of a sale in a suit for taxes, but that defendants acquired such tax title as innocent purchasers for value without knowledge of any defect in her title; pleading the ten-year, twenty-four year and the thirty-year limitation, and payment of taxes therefor by defendants, and failure of plaintiff to pay any such; valuable improvements as occupying claimant; pleading also that the surplus money proceeds of the tax-suit sale of the land was claimed by Joseph B. Kin-

ney, and that plaintiff was estopped by that suit and proceeding from claiming title to these lands; laches on the part of plaintiff; and praying that the court decree defendants to be the fee-simple owners of the lands in question.

The cause was heard by the court at the September term, 1917, and taken under advisement. At the September term, 1919, judgment was rendered setting aside and holding void the sheriff's deed on the tax-judgment sale, and adjudging the plaintiff to be the owner in fee of and entitled to the possession of 5214/6300 undivided part of two tracts of land, one originally containing 101.60 acres and the other 38.93 acres, and 5214/6300 of an undivided one-half of another tract of 4 ⅔ acres, all in Township 50, Range 29, Jackson County.

The tract described in the petition and judgment as the southwest fractional part of the southwest quarter of Section 5, originally containing 38.93 acres, appellants designate as "Tract A," and that described as all of the southeast fractional quarter of Section 6, originally containing 101.60 acres, as "Tract B," and that described by metes and bounds, containing 4⅔ acres, as "Tract C." This tract adjoins Tract B at the northwest corner. (Mrs. Mathews also owned an undivided one-half in fee of Tract C at the time the mortgage, at number 12 of the abstract of title infra, was executed.)

The lands sold in the proceeding for delinquent taxes are Tract A and the west eight acres of Tract B. The Missouri River is the northern boundary of each tract.

The abstract of title shows the following transfers:

TRACT A:

1. Sept. 7, 1838. Patent, U. S. to Joseph Roy.

2. Aug. 21, 1847. Warranty deed recorded Book M, page 411, Joseph Roy and wife to Celia F. Robinson (afterward Cushenbury) and Fannie A. D. Cogswell (afterward Mathews, mother of plaintiff).

3. June, 1856. Warranty deed, Book Y, page 529, Fannie A. D. Mathews and husband, James P., and Celia F. Cushenbury and husband, D. Cushenbury, to William Cogswell; the exact wording of the description being as follows:

"Also our undivided interest in a fractional piece of land deeded by Joseph F. Roy to Celia F. and Fannie A. D. Cogswell, now Celia F. Cushenbury and F. A. D. Mathews, it being a part of the S. W. ½ of the S. W. of Sec. 5, Twp. 50, Range 29."

The certificate of acknowledgment of the female grantors to this deed is as follows:

"Being by me made acquainted with the contents of said deed, acknowledged on an examination apart from their respective husbands, and they executed and delivered the said deed freely and without compulsion of their said respective husbands."

On the offer of this instrument in evidence, defendants objected because the description was insufficient to identify Tract A, and the acknowledgment did not recite that the married women had declared they executed "freely and without compulsion *or undue influence*" of their husbands.

4. Oct. 29, 1857. Warranty deed, Book 27, page 46, William Cogswell and wife to F. A. D. Mathews, the granting clause being as follows:

"Bargain, sell and convey to the said F. A. D. Mathews and all her children she has now or ever may have the following described tract of land, to-wit:" (Here follows description of Tract A).

The *habendum* clause reads:

"To have and to hold the same unto the said F. A. D. Mathews and her children as aforesaid and their heirs, but it is to be distinctly understood if the said F. A. D. Mathews may hereafter conclude to sell the above described tract of land she is hereby empowered and authorized to do so by arranging it so that the proceeds of said land is to be laid out for other lands or property to

be conveyed so as·to put the right of title in the said F. A. D. Mathews and her children.''

TRACT B:

5. June 1, 1868. Patent, U. S. to William Cogswell, contaning 101.60 acres.

6. April, 1856. Warranty deed recorded Book Y. page 532, William Cogswell and wife to Fanny D. Mathews. The granting and *habendum* clauses are the same in this deed as in number 4 supra.

TRACT C: 4⅔ acre tract described by metes and bounds (approximately 15 poles E. and W. by 42 poles N. and S.) in and out of the N. E. corner of New Madrid Claim Survey at N. W. corner of Tract B.

7, 8 and 9 are transfers which bring the title down to Jonathan Colcord.

10. Aug. 9, 1850. Warranty deed, Book P, page 477. Jonathan Colcord and wife to F. A. D. Cogswell and Celia F. Cuisenbery, daughters of Wm. Cogswell.

11. June 1856. Deed Book Y, page 528, Celia F. Cushenbury and husband, Daniel, conveying undivided interest of grantor in Tract C to Fanny A. D. Mathews. (The granting and *habendum* clauses are the same as in number 4.)

12. July 14, 1866. Mortgage with power of sale, Book 46, page 497, filed September 16, 1866, Fanny A. D. Mathews and her husband to Joseph Kinney, conveying among others, Tracts A, B and C. This mortgage recites that it is given to secure a note for $7280, due at twelve months, with the usual power of sale.

13. May 15, 1871. Mortgagee's deed, Book 89, page 41, Joseph Kinney, mortgagee, to Joseph Beeler Kinney. This forecloses number 12.

14. Suit was brought by the State ex rel. Daniel Murphy, Collector, against Joseph B. Kinney, James P. Mathews and Fanny A. D. Mathews, his wife, Porter H. Mathews, Andrew R. Mathews and Mary Eliza Mathews, a minor, to the March term, 1880, of the circuit court, to enforce the State's lien for taxes on Tracts A

and B for the years 1869 to 1878 inclusive. The return recites personal service on the defendants except Joseph B. Kinney, who filed answer. Guardian *ad litem* was appointed for the minor defendant and such guardian filed answer.

On March 27, 1880, judgment was rendered as prayed, adjudging the amount of taxes, interest and fees on Tract A at $111.96, and on Tract B at $373.42, total $485.38.

Special execution was issued on this judgment, September 4, 1880, and the sheriff sold all of Tract A for $410 and eight acres off the west side of Tract B for $480, to Matilda Kinney, out of which the sheriff paid the judgment and costs, and had remaining $245.68.

Thereupon the defendant J. B. Kinney filed his motion setting up that he was the absolute owner of the lands sold and was entitled, as against the other defendant's to this surplus of sale proceeds, $245.68. Notice of this motion was given to Porter H. Mathews by posting in the clark's office, and the motion was sustained by the court on September 29, 1881, Sheriff's deed, dated October 25, 1880, recorded in Book 120, page 448.

15. Oct. 4, 1880. Warranty deed, Book 111, page 537, by James P. Mathews, Fannie A. D. Mathews and Andrew R. Mathews to Mary E. Mathews, conveying Tract A, 30. 93 acres; also Tract B, therein recited as 90 acres.

16, Dec. 14, 1882. Warranty deed, Book 130, page 143, consideration $3000, from J. B. Kinney, J. Kinney and Matilda Kinney, his wife, to Mary E. O'Donnell, conveying Tracts A, B and C, containing a recital as follows:

"Should at any time the title be imperfect, and the above Kinneys unable to make it perfect, then said Kinneys agree to refund all money paid in original purchase, upon condition that Mary E. O'Donnell deed the

said property, back to them, and also give the 'said Kinney's possession of the land.''

17.  Aug. 12, 1885.  Warranty deed from Joseph B. Kinney and Alice P. Kinney, his wife, to Mary E. O'Donnell, Book 141, page 94, consideration $5 cash, conveying Tracts A and B. (This deed evidently was made to release dower of Joseph B. Kinney's wife, Alice P).

18.  Sept. 13, 1882.  Mortgage deed of trust, Mary E. O'Donnell to Joseph B. Kinney, trustee, to secure note of $3000 due eight years after date, bearing eight per cent interest, to Joseph Kinney, mortgaging Tract B, recited to contain 80 acres.

19.  April 25, 1892.  Warranty deed, recorded, Book 186, page 367, Mary E. DeGarmo, formerly Mary E. O'Donnell, and husband Frank DeGarmo, to Michael H. O'Donnell, Daniel C. O'Donnell, Richard M. O'Donnell and Mounnie D. O'Donnell, consideration $6000, conveying Tracts A and B, subject to deed of trust from Mary E. O'Donnell to Joseph B. Kinney, which the second parties assume and agree to pay.

20.  April 30, 1900.  Warranty deed, Book 226, page 254, M. D. O'Donnell to Richard M. and Michael H. O'Donnell, conveying Tracts A and B and other lands.

21.  Jan. 7, 1915.  Warranty deed, Book 334, page 231, Daniel C. O'Donnell to Richard M. and Michael H. O'Donnell, conveying Tracts A, B and C.

J. B. Kinney, witness for plaintiff, by deposition testified on direct examination as follows:

My full name is Joseph Beeler Kinney; father's name, Joseph Kinney; mother's name, Matilda Kinney; witness born July 25, 1846; married in 1882; business, steamboating; father's and mother's home, which he called his home, was in Old Franklin, Howard County, Missouri; his mother died in 1896, his father two or three years previously.  That he bought the land in question in this case at foreclosure sale under mortgage in which his father was mortgagee; could not remember when; did not remember what he paid; that he ''left'' Mathews stay on the place; he promised to keep up the

place; he found that Mathews was tearing down the brick storehouse and selling the brick off the place; that witness then dispossessed him and put someone else on the place; that he then sold the land to Mary O'Donnell whom he put in possession; could not remember what she paid for it; that he bought the place for himself to save the debt due his father, as he recollected it, and wanted to keep the land in the family; when he sold it to Miss O'Donnell she gave back a mortgage to secure a note payable to his father; asked how it came he "left" this property sell for taxes, he answered that there was a large amount of taxes on it and that he let it go to make the title better; that Judge Gates was instructed by him to buy it in at the sheriff's sale; supposes he paid the money, don't remember now; his mother was not present; that Mr. Mathews's lawyer also bid at the sale; that the land was bid up to nine hundred some odd dollars, and the sheriff afterwards sent him a check for the surplus; did not remember whether it was bid in in his name; that only 47 acres of the land was sold for taxes; that Miss O'Donnell was very intimate with his family and it was through them that the sale was made to her; witness did not remember ever talking to her about the title; he remembered making the deed and selling it to her; supposed his father and mother joined him in the deed; did not remember making the deed in which his wife, Alice P., joined; that the $3000 note Miss O'Donnell made payable to his father was paid a long time ago; witness did not know what became of it; thought the administrator of his mother's estate was the last one that had it; did not know why the clause in the recorded deed to Miss O'Donnell was put in, concerning refunding the purchase price.

Mary DeGarmo, witness for plaintiff, by deposition, testified: That her maiden name was Mary E. O'Donnell, sister of Daniel, Richard, Mounnie and Michael O'Donnell; she was born November 3, 1861; knew Joseph Kinney, his wife Matilda, and son J. B. Kinney and his wife; she first met them at a farm near Franklin, Howard Coun-

ty, Missouri, where she and her parents lived and were neighbors with the Kinneys; was then about 18 years old; asked if she knew how the Kinneys came to own the property in question, answered, "I do," but that she did not like to go into details; that Captain Kinney loaned money to Mr. and Mrs. Mathews on the farm at Cogswell's Landing, Jackson County, the old home name of the farm; that the Mathews did not pay back the money; they lost their home in St. Louis where they were living; Kinney moved them back on one of his boats to the place at Cogwell's Landing; Kinney let them have money to start again on the farm; Captain Kinney had a deed of trust given by the Mathews for a part of the money he had loaned; witness had had all these papers, but had turned them over at the time she sold the place, and thought the amount of the mortgage was about $7000; finally after the Mathews stated their inability, Captain Kinney brought a suit the nature of which she could not state; asked if it was to foreclose the mortgage, she replied that she did not know what it was called in law; Kinney's attorneys were Wallace & Gates of Independence; thought they tried the case at Lexington or Independence; she thought it was a suit that went to the Supreme Court; that when Captain Kinney loaned the money to Mathews she was teaching school as principal of the New Franklin Public Schools in Howard County; that a suit was brought for delinquent taxes; she thought it hung on for a couple of years; that Mr. Wallace told her about it in after years; the Kinneys handed her all the data relating to the matters she was testifying about and she went over it; that Captain Kinney was out some $14,000 or $15,000, including attorneys' fees and expenses; that in addition to teaching school she was giving private educational services to the members of Captain Kinney's family and became "sort of a clerical member" of the family; they brought out their various papers and various holdings at different times and she went over them, and in that way she became acquainted

with the story of the Mathews property, which was quite a heavy burden to Captain Kinney; that he finally sold it or gave it to Joe Kinney, his eldest son, who bought it at the mortgage sale; she did not know at the time of the property being sold for taxes; did not know that Joe Kinney had bought it in at the mortgage sale; thought his father had given it to him; that she bought the place from Captain and Mrs. Kinney not really knowing that Joe had an interest in it; later found out that he did have an interest in it; her attention being called to the fact that Joe Kinney joined in the deed with his father and mother, witness replied that such circumstances needed an explanation; that the first deed the Kinneys made was torn up; that when she came to look over the papers after she had bought the property from the Kinneys, she heard that Joe Kinney had an interest in the property; that she gave the Kinneys $3000 and services rendered by her to them; that she went up on Captain Kinney's boat to Cogswell's Landing to see the "wonderful place I had bought;" she found Mr. Mathews and his wife and Miss Jennie living on it; had long hours of conversation with them and found them cultured and intelligent people; during her visit Mr. Mathews said his wife had been willed the place by her father, definitely stating that Mrs. Mathews could sell the place and buy a home for herself and children but that she could never mortgage it; she took the next boat to Booneville to see Captain Kinney; had not yet put her deed on record; by the time she had so returned Captain Kinney and Mrs. Kinney had discovered that their son Joe Kinney had a title not covering every acre as witness understood, but that it was necessary for her to have a new deed from the son and wife, Alice Polk Kinney; that she consulted Pennington, a lawyer at Booneville, on both these propositions and got an opinion from him addressed to Captain and Mrs. Kinney stating that the deed she had could be used, but that in order to satisfy her he recommended that they have Joe Kinney and wife sign the deed

and insert the clause about repaying the money if the title should prove impaired; that after several months this deed was signed and filed at Independence, witness taking it there with Captain Kinney; that in the meantime, Mathews, after her visit and talk with them, turned the farm over to a man named Isaiah Johnson; at any rate, he was there and Mathews and his family moved onto another farm; that it was on account of these claims made by Mathews after she bought the place by the first deed that she had this clause about returning the money put in the second deed; that she thought it was the year after buying the land that she put her father and mother in possession; that her family remained and her father and mother died on the place; that two of her brothers were still on this farm; that she did not discuss the title with Captain Kinney fully until after she bought the property, which later discussion was the cause of the lawyer Pennington inserting the clause about the return of the money in the second deed; that at the time of the first deed from the Kinneys she gave the mortgage to secure the note to Captain Kinney, dated September 13, 1882; that she paid part of that note and her family paid the rest after she sold the place to them; that she did not think, and if she did, she had completely forgotten, that she ever discussed the title with her people when she sold them the land; "I may have done it, you will have to ask them;" that while she was negotiating for the purchase of the land she was doing some clerical work for Kinney and saw various things and papers and became familiar with the details before the transaction was closed; did not remember whether she saw the tax deed or not; did not pay much attention to it because she had the warranty deed; that she never had the title examined by an attorney before she bought it, and that was all she knew about that; she thought Captain Kinney told her about a suit he had in court to get the property, but that it was after her talk with Mr. Mathews in which he, Mathews, expressed the question as to the title;

289 Mo.—17

when asked if that was brought out before the deed was finally made, answered, "Possibly before it was filed. It may not be, however. The deed will show that;" that she had been teaching probably. two years before she bought this place; she never talked to Joe Kinney (the son) about it, had barely met him; that he had brought his wife home on one occasion and stayed three days; he lived down south and was a captain on a steamboat.

Porter Mathews, plaintiff, testified that he was the son of James P. Mathews and Fannie A. D. Mathews; that his father died November 28, 1898, his mother, August 22, 1915, and that he was the only surviving child; that none of the other children ever married and none of them left any descendants; that he was born in 1851 and left the farm in 1871; that he moved to California in 1883 and had lived there ever since; that immediately before that he was in Denver, Colorado, living there about a year and a half, and prior to that in Leadville about two years; that he had not lived in Missouri since 1878; in that year was at the old home place for a year; testified as to the buildings on the land in question; that the farm was under fence and some cross fenced; witness did not know about some of the property being sold for taxes at the time it was sold, but afterwards knew it was sold; on his asking what time it was sold and being told that it was some time in the year 1880, answered that he was in Colorado; that when witness was on the place in 1878, about fifty acres of the land was in timber; that when last on the place, about three months before the trial, he thought only about eight or ten acres was in timber; and the other had been removed; that all of the place except the seven or eight acres in timber was in cultivation when he was last on the place, and in 1878 it was all in cultivation except the fifty acres then in timber.

Joe Cogswell testified that the land in question seemed to be pretty good level land lying along the river; thought it not subject to overflow except at very high waters; used mostly for grain lands; that he had

been farming in that part of the county for about twenty years; supposed the money rental value to be about $8 an acre; estimated the amount of the farm in cultivation as eighty or ninety acres.

Isaiah H. Johnson testified that he moved onto the land in question to occupy it in the latter part of August, 1881; that while living there he met Miss Mary O'Donnell in the summer of 1882; don't remember having any conversation with her relative to the title; did have some talk with members of the O'Donnell family about 1882, probably a year after; this talk was with the O'Donnell father in the presence of the boys, Dan, Michael, Richard and Monty; thought they were all grown then except Monty, who was probably fifteen years old; this talk was after 1882 and was concerning that Mr. Mathews was claiming the place; that it was a common thing to hear that talked about in the neighborhood; that the litigation over the title was talked about in the neighborhood; J. B. Kinney told him in the spring of '82 that he had lawed Mr. Mathews for fourteen years; this conversation was while witness was occupying this place; the O'Donnells moved on the adjoining place in the spring of '82, and on this land in question in the latter part of '82, by arrangement with the witness; described the buildings then on the place as a dwelling house, a store house and some old tumbledown other buildings; the farm was fenced; that the adjoining land rents for $10 an acre.

The testimony of B. F. Johnson was substantially the same.

For the defendants, M. D. O'Donnell testified that he is one of the grantees of the deed to the land in question, from his sister; that he was ten years old in 1882 and his brother Richard was twelve years old; that all of the boys were minors with about two years difference between their ages; that he recollected going on

the farm with his father and mother; his sister was then living in Booneville; she never lived on this farm; she visited the home during her vacations; the land was conveyed to the witness and his brothers by their sister Mary in 1892; that the witness did not then have any knowledge of any defect in her title, "we thought our title was all right;" that he had heard, after he and his brothers bought the place, a general gossip that the Mathews were questioning the title; that the postman at Levasy told him that some lawyer from Independence had spoken to him about it; witness thought it was from two to five years after they bought the place that he first heard this.

Defendants introduced in evidence an agreement between the parties as to the children of Fannie A. D. Mathews and the dates of their births and deaths, as follows;

|  | Born | Died |
| --- | --- | --- |
| Porter H. Mathews (plaintiff) | April, 1851 | |
| Andrew R. Mathews | May 19, 1853 | 1908 |
| Fannie J. Mathews | Sept. 19, 1855 | April, 1873 |
| Ellen Mathews | Jan. 3, 1859 | Mar. 14, 1859 |
| Mary E. Mathews | April 25, 1862 | 1906 |
| Cecil C. Mathews | Aug. 8, 1865 | Sept. 5, 1865 |
| Sarah A. Mathews | Aug. 30, 1867 | April 27, 1870 |

(None of the children left descendants.)

The husband of Mrs. Mathews, father of the children, died November 24, 1898.

Mrs. Mathews died August 22, 1915.

This is all the evidence. The defendants did not testify.

I. The appellants' brief does not contain a statement of the facts in this case, as required by Rule 15. We might dismiss the appeal for failure to comply with the rule, but prefer to dispose of the case on its merits.

Brief.

II.   The deed from Fanny A. D. Mathews and Celia F. Cushenbury and their husbands to their father, William Cogswell, conveying Tract A, 38.93 acres, was executed in June, 1856.

Appellants' objection to this deed is that the certificate of acknowledgment omits the words "or undue influence." Revised Statutes 1855, chapter 32, section 39, page 363, requires the certificate of acknowledgment of a married woman shall set

Acknowledgment.   forth "that she executed the same freely and without compulsion or undue influence of her husband." The certificate recites that "they executed and delivered the said deed freely and without compulsion of their said respective husbands." The law touching acknowledgments requires no more than a substantial compliance with its terms. [Chauvin v. Wagner, 18 Mo. 531; Hughes v. Morris, 110 Mo. 306; Alexander v. Merry, 9 Mo. 514.]

In Gross v. Watts, 206 Mo. 373, l. c. 393, it was held (syl. 4): "A certificate of acknowledgment is not defective because it does not recite that the deed was executed as the grantor's 'free act and deed.' The statute requires it to state the 'act of acknowledgment' and where the certificate recites that the grantor 'duly acknowledged the execution of the same,' it substantially complies with the statute."

See also Ray v. Crouch, 10 Mo. App. 324; Hughes v. McDivitt, 102 Mo. 77; Huse v. Ames, 104 Mo. 91.

The identical question was ruled adversely to appellants' contention in Bohan v. Casey, 5 Mo. App. 101, l. c. 110, where the court said: "It is complained that the notary did not ask the wife as to 'undue influence' and to have asked her as to 'compulsion' is not enough. But the notary asked her whether she executed the deed of her own free will or whether her husband compelled her to do it. To the former question she re-

plied: Yes; and to the latter: No. The words 'undue influence' do not appear to have been used, but it was not necessary to use the very words.''

The object of the law, as SCOTT, J., said in substance, is to obtain the free and unconstrained consent of the wife to the deed alienating her rights. If this is done, the law is satisfied. The law has entrusted the writing of deeds and the taking and certification of acknowledgments to officials unskilled in the drafting of forms. It is a task beyond their powers from the want of skill. Under such circumstances it would be hard in courts to exact a rigorous compliance with forms. Such a course would disturb a great many titles, and that, too, in cases where no wrong has been done and where there had been entire acquiescence in the acts, conscious of their propriety, until the information of the technicality is found out by some prowling assignee, or some child who may make the mother who bore him sin in her grave. [Dissenting opinion in Chauvin v. Wagner, 18 Mo. 1. c. 556.] It is the policy of the law to construe them (certificates of acknowledgment of married women) liberally, and where a substantial compliance appears clearly and affirmatively, the certificate will be held sufficient, no matter what the language employed. [1 C. J. 858, sec. 209.]

In the instant case, Mrs. Mathews and her sister, owning the tract in common, conveyed it to their father who reconveyed the whole of it to Mrs. Mathews and her children as a settlement. She accepted and retained possession, claiming title under this deed, and was satisfied.

III. It is also urged that the description in the deed, at number 3 of the abstract, is insufficient to identify Tract A, and that it is also bad ''because it says our undivided interest'' and did not under-

Description.    take to convey the land itself, and the words

"our undivided interest" describe nothing. If the deed
did not refer to the Joseph Roy deed, the description
would be indefinite, but it reads; "our undivided inter-
est in a fractional piece of land deeded by Joseph F.
Roy to Celia F. and Fanny A. D. Cogswell," etc. The
reference to the Roy deed, where the tract is described,
identifies the tract conveyed.

"The office of a description is not to identify the
land but to afford the means of identification, and when
this is done it is sufficient. Generally, therefore, any de-
scription is sufficient by which the identity of the prem-
ises can be established, or which furnishes the means
of identification. A conveyance is also good, if the de-
scription can be made certain within the terms of the
instrument, for the maxim, *Id certum est quod certum
reddi potest,* applies. So a description from which a
surveyor can locate the land is good. A deed will not
be held void for uncertainty of description if by any
reasonable construction it can be made available. Ex-
trinsic facts pointed out in the description may be re-
sorted to to ascertain the land conveyed, and the prop-
erty may be identified by extrinsic evidence, as in the
case of records of the county where the land is situate."
[18 C. J. 180.]

"The property intended to be conveyed may be
designated by the descriptive name of the tract by which
it is generally known, or well known, or can be identi-
fied, or where there is no other tract of the same name
in that locality, even though there are defects in other
parts of the description." [18 C. J. 181. See also
Bollinger County v. McDowell, 99 Mo. 632; Whitwell
v. Spiker, 238 Mo. 629.]

The deed conveys "all our undivided interest,"
meaning the undivided interest of each grantor. Evi-
dently the deed was written by an unskilled hand, yet
the meaning is plain. The grantee took and retained

exclusive possession of the tract conveyed. This of it-self would cure the defective description. The defend-ants derive title through the conveyance. It passed the interests of the grantors. [18 C. J. 292, sec. 268.]

IV. Did the several deeds conveying the three tracts "to Fannie A. D. Mathews and all her children she has now or ever may have" vest in Fanny a life estate with remainder in fee to her children? Fee or Remainder. In considering this question we should not overlook the *habendum* clause which is the same in each deed. If the parties understood that Mrs. Mathews took a fee simple estate, why did they give her the power to sell on condition that the proceeds should be invested in other lands to be conveyed 'so as to put the title in her and her children?

Appellants are somewhat at sea. They contend that the deeds should be construed as either vesting a fee in Mrs. Mathews, or an estate in common in her and her children, "the estate opening to let in each unborn child." In Hamilton v. Pitcher, 53 Mo. 334, the deed was to M. W. Pitcher and her children. It was held that she and her children *in esse* took as tenants in com-mon. The same ruling was made in the case of a devise in Allen v. Claybrook, 58 Mo. 124: [See, also, Hall v. Stephens, 65 Mo. 670.]

It is obvious that neither of these cases lends sup-port to either of appellants' contradictory constructions of the deeds in question. Here the grant is to Mrs. Mathews "and all her children she has now or ever may have." If the grantor intended the children to take a present interest he doubtless would have ex-pressed that purpose by naming them as grantees. The grant, however, has the *indicia* of a settlement. The *habendum* empowers her to sell the land, but expressly provides that in case of a sale "the proceeds shall be laid out for other lands or property to be conveyed so

as to put the right of title in the said F. A. D. Mathews and her children," that is, those born and unborn.

In the annotations to Rice v. Klette, 149 Ky. 787, 149 S. W. 1019, L. R. A. 1917B, 45, where the cases are collated, the learned editor at page 65, says: "It has been held that if, in addition to the bequest, there are any superadded words which import a desire that the property shall be settled, the court will lay hold of the words and infer a gift to the parent for life, with re-mainder to the children." Citing Holt v. Bowman, 33 Ga. Supp. 129, where a devise to a woman and her chil-dren was held to give the mother a life estate and the children a remainder in fee; and Re Bellasis, L. R. 12 Eq. (Eng.) 24 L. T. (N. S.) 466, 19 Week. Rep. 699, in which "an informal instrument creating a trust 'for my niece Mrs. Chas. Milford and her children' was held to create a trust for Mrs. Milford for life, with re-mainder to her children as joint tenants."

On this question our court has spoken in no un-certain terms. In Garrett v. Wiltse, 252 Mo. 699, LAMM, J., conclusively answered the contention that the moth-er and children take as tenants in common under these deeds, and gives the sanction of his approval to the same ruling by VALLIANT, J. At the foot of page 710, the learned jurist said: "Look at it from another view-point. As said, there were three children in being, born of Laura Alice by Richard, her husband, at the time of the Whitson deed. Now, in construing a deed it is sometimes worth while to take into account what the grantor would say but does *not* say as well as what he does say in getting at his intent. This grantor in making a conveyance on which, when spread of record, the world might act, named none of those children. If he desired them to take a present interest as tenants in common with their mother why did he not say so and name them? Is that not the usual way? Why,

in dealing with grandchildren, did he ambush and screen his intent by use of a term importing to the contrary? In speaking to that phase of the matter the words of VALLIANT, J., in Tygard v. Hartwell, 204 Mo. l. c. 206, are apposite thus: 'It would be a very strained construction to say that it was the intention of the parties to this deed to convey the land to James F. White and his children as tenants in common. If such had been the intention the natural course would have been to have inserted the names of the two children then living in the granting clause of the deed as grantees. If it was the intention to include not only those then in being but those thereafter to be born, then the idea of a tenancy in common must be excluded because the unborn children could not be made tenants in common in an estate presently created. [Kinney v. Mathews, 69 Mo. 520; Rines v. Mansfield, 96 Mo. 394.]' "

It will be noticed that these rulings are based on Kinney v. Mathews, 69 Mo. 520. By referring to the opinion in that case, l. c. 524, it will also be seen that VALLIANT and LAMM, JJ., adopted the argument of NAPTON, J.

After Kinney, on May 15, 1871, had purchased the three tracts of land involved in this action at the foreclosure of the mortgage given by Mrs. Mathews and her husband to Joseph Kinney, he brought an action of ejectment, in July, 1876, against James P. Mathews. He did not claim that Mrs. Mathews owned the fee, but contended that the giving of the mortgage was a valid execution of the power of sale given her by the deed from her father. The venue was changed to Livingston County. In the circuit court it was held that the power was special and limited, and did not empower her to excute the mortgage. On appeal this court considered the terms of the grant and the power to sell contained in these very deeds. Concerning the pow-

er of sale, NAPTON, J., in an opinion handed down June 13, 1879, with the concurrence of all the judges, at page 522, said: "The power to sell was not a general one, but was restricted to a sale in which the proceeds should be invested in other lands or property to be settled for the uses specified in the original conveyance. The lands could only be sold or exchanged for lands previously settled or secured to the wife and children. . . . The grantor, however, had an interest which she could convey. . . . This renders it necessary to determine what interest Mrs. Mathews had, and upon this point it must be conceded that there is room for doubt. . . . A tenancy in common could certainly not be claimed, except we reject the clause in the deeds which expressly includes future-born children."

After reviewing and distinguishing other cases, it was the judgment of the court that Mrs. Mathews had a life estate in the lands, which was vendible, with remainder in fee in her children; HENRY, J., dissenting; SHERWOOD, J., expressing no opinion.

In the light of the foregoing authorities, we think it clear that the grants contained in the deeds in question manifest an intention to make a settlement and that Mrs. Mathews took a life estate only in the lands with a remainder in fee in her children.

V. Appellants complain that the court erred in setting aside the sheriff's deed, pursuant to the judgment for taxes. This sale includes Tract A and eight acres off of the west side of Tract B. The testimony shows very clearly that Mrs. Mathews and Kinney, the life tenants, allowed the taxes to go delinquent for the years 1869 to 1878. As we have seen, Joseph Kinney acquired the life estate of Mrs. Mathews at a foreclosure sale, May 15, 1871, and arranged for Mathews to remain on the land as his tenant. After the

*Sale for Taxes.*

opinion in Kinney v. Mathews was handed down, Kinney determined to let the land go to sale for delinquent taxes in order to acquire the title of the remaindermen. Suit was brought to the March term, 1880, and judgment rendered at that term, under which the land was advertised for sale, and on October 2, 1880, forty-seven acres were sold. Kinney employed Judge Gates to bid in the land at the sale. His mother, who lived in Howard County, was not present at the sale. He did not remember whether the deed was made to his father or to his mother, but supposed he paid the money.

The payment of the taxes was a charge upon the life estate. It was the duty of the life tenant to pay the taxes and protect the interests of the remaindermen. [Fountain v. Starbuck, 209 S. W. 900; Bone v. Tyrrell, 113 Mo. 175, 188, 20 S. W. 796.] The purchase of the land at the tax sale inured. to the benefit of the remaindermen. [Peterson v. Larson, 225 S. W. 704.] It operated as a mere payment of the taxes. [First Congregational Church v. Terry, 130 Iowa, 513, 515; Blair v. Johnson, 215 Ill. 552, 557.] Kinney occupied a fiduciary relation to the remaindermen and was bound to exercise every reasonable precaution to preserve the property intact for transmission at the termination of the life estate. [Gibson v. Brown, 62 Ind. App. 460.] Not only Kenney, but all who took title from him with notice of the violation of the trust, were trustees ex maleficio. [Case v. Goodman, 250 Mo. 112.] Mary O'Donnell and her brothers had constructive notice from the deed records that J. B. Kinney had only the life estate of Mrs. Mathews. The tax deed informed them that the life tenants had suffered the land to go to sale for delinquent taxes which the law required them to pay. [Loring v. Groomer, 110 Mo. 632, 1. c. 641.] But it further appears from the evidence that Mary O'Donnell was an intimate member of Kinney's family, a clerical member; that she knew of the case in the Supreme Court, then of the

suit for delinquent taxes and of Kinney's purpose in letting the land go to sale, and that he was the real purchaser. She dealt with him, not with his mother. She testified she had gone over the papers and was familiar with the details before closing the deal. She contracted for the purchase of the land without having seen it, giving her note for $3000 at eight years. After this, Captain Kinney took her to see the "wonderful place I had bought." She learned from Mr. Mathews that Mrs. Mathews could sell the place and buy a home for herself and children, but could not mortgage it, the very conclusion reached in Kinney v. Mathews. She tore up the deed Kinney had given her and, on the advice of an attorney at Booneville, had another deed executed protecting her against failure of the title. It does not appear when or how much, if anything, she ever paid on her note, but in 1892 she sold the farm to her brothers who assumed the payment of the note. Her father, mother and brothers had lived on the farm for ten years.

The condition of the title had been the subject of general neighborhood talk for many years. It could not well have been otherwise, in view of the decision of this court in Kinney v. Mathews. Mathews, as we have seen, told Miss O'Donnell how the title stood. It was generally known that the children of Mrs. Mathews would be entitled to the land when their mother died. The testimony of the Johnsons is that this was discussed in the O'Donnell family when the defendants were present in the winter of 1882. They heard this testimony and did not take the witness stand.

"Courts of equity, since their earliest foundation, have always recognized that the still, small voice of suggestion, emanating as it will, from contiguous facts and surrounding circumstances, pregnant with inference and provocative of inquiry, is as potent to impart notice as a presidential proclamation or an army with banners." [Conn. Mutual Life Ins. Co. v. Smith, 117 Mo. 261, l. c. 292.]

It was held also in the case last cited, and indeed it is an elementary proposition, that the burden of proving a bona-fide purchase from a fraudulent grantor rests on the defendant pleading it. [20 Cyc. 763.] To support the plea that defendants were innocent purchasers, they must prove they bought without notice, and paid the purchase money also without notice. [Halsa v. Halsa, 8 Mo. 303; Young v. Schofield, 132 Mo. 650, 660; Lincoln v. Thompson, 75 Mo. 613, 638.] The failure of the defendants to testify creates an inference that they refrained because the truth would not aid their contention and affords strong evidence of the fraud charged. [20 Cyc. 763; Stephenson v. Kilpatrick, 166 Mo. 262, l. c. 269. See also Eck v. Hatcher, 58 Mo. 235; Burger v. Boardman, 254 Mo. 238, l. c. 256.] The learned court did not err in canceling the deed.

VI. It is insisted by appellants that the interests which Mrs. Mathews inherited from her deceased children subsequent to the execution of the mortgage, July 14, 1866, to Joseph Kinney, passed by virtue of Section 36, Chap. 32, p. 363, Revised Statutes 1855, now Section 2266. Revised Statutes 1919.

After-Acquired Interest.

In Hendricks v. Musgrove, 183 Mo. 300, l. c. 309, it was said: "In addition to this the rule in this State is that the doctrine of after-acquired property does not apply to a married woman's deed (at any rate if it was made prior to 1889 when the Married Woman's Act was passed), but that without regard to the form of the deed only whatever interest she had at the date of the deed passes. [Brawford v. Wolfe, 103 Mo. l. c. 397; Ford v. Unity Church Society, 120 Mo. l. c. 509.]"

This ruling was affirmed in Conrey v. Pratt, 248 Mo. 576, l. c. 583.

VII. The Statute of Limitations did not begin to run against the plaintiff until the death of his mother

on August 22, 1915. The remainderman cannot come into court to recover possession of the land before the life estate has terminated, and consequently neither the thirty-year statute, nor any other statute, begins to run against him until the life estate is lifted. [Hall v. French, 165 Mo. 430; Bradley v. Goff, 243 Mo. 95, l. c. 102; Danciger v. Stone, 278 Mo. 19, 27.] Kinney and his grantees with notice, being trustees ex maleficio, the statute would not run in their favor. [Case v. Goodman, 250 Mo. 112, l. c. 115.]

*Limitations.*

VIII. The claim that the order of the court sustaining Kinney's motion directing the sheriff to pay over the surplus money in his hands arising from the sale stops plaintiff to claim title to the land, is without any merit. It has been seen that Kinney occupied a fiduciary relation and was under obligation to pay the taxes and protect the estate of the remainderman against the very proceeding he either instituted or allowed to be instituted for the avowed purpose of covinously defeating plaintiff's title. He will not be permitted to profit by his own wrong. The law regards that proceeding simply as a payment of the taxes by the tenant whose life estate was bound for their payment. In that view, the court rightly ordered the surplus money paid over to him. Moreover, the order was made on a motion respecting a collateral question arising after judgment. It is a bar to a renewal of any claim to the surplus fund. It is not res adjudicata as to plaintiff's claim of title to the land. [23 Cyc. 1224.]

*Tax Sale: Surplus Money.*

The judgment is affirmed. All concur.

## ON MOTION FOR REHEARING.

In the motion for rehearnig it is claimed that the court is in error in several important phases of the case.

I. It is said that Joseph B. Kinney acquired title May 15, 1871, at the foreclosure of the mortgage given by Fannie A. D. Mathews and her husband to Joseph

Kinney, July 14, 1866, and that he did not get
possession of the land until after the decision
in the case of Kinney v. Mathews at the April
term, 1879.

**Grantee of Life Tenant.**

Kinney testified: "I left Mathews stay there and
kept telling him I did not want him to move off this
place if he would only keep up the property, and he
promised this and he promised that, and finally some-
one wrote me that he was tearing down a brick storehouse
and selling the brick off the place, and I went down to
look at it, and saw that he was just letting the property
go down and was selling the brick from the storehouse.
. . . I left him there for I don't know how long,
but he seemed to be angry, mean and mad, and I sent a
man down there and told him to get right off the place
and if he didn't get off to throw him off, and I put it in
charge of some of the neighbors there.

"Q. Did you ever rent the place to anybody? A.
I don't recall it now. I remember I told these people to
go on there and take care of the place and they could
have all they made off of it; but if I leased it I cannot
remember."

The purport of this testimony is that Mathews
bceame Kinney's tenant in the year 1871.

Mrs. Mathews, the life tenant, allowed the taxes to
go delinquent for the years 1869 to 1879. The motion
states that Mrs. Mathews was in possession of the land
until Kinney got possession. It was improved, produc-
tive, farming land. When Kinney acquired his title and
possession he stepped into her shoes and into the fidu-
ciary relation she sustained to the remaindermen. It was
the duty of the life tenant to pay the taxes. The pay-
ment of the taxes was a charge upon the life estate, no
matter who owned it. The fact that the taxes were
delinquent when Kinney acquired possesion is imma-
terial, whether it was at the time of the foreclosure in
May, 1871, or at the end of the litigation in 1879.

Counsel cite authorities holding that it is not the duty of the life tenant of unimproved, unproductive land to pay the taxes. That rule has no application here, as all the evidence shows this was productive farming land.

II.  We have again gone over the case of Barkhoefer v. Barkhoefer, 204 S. W. 906.  In that case the testator devised to the children of his son, Henry W. Barkhoefer, a tract of land, provided that the testator's son, Henry W., have the use of the land during his life on certain named conditions.  At the time the will was made, Henry had two children; a third was born after the death of the testator.  It was held that the children *in esse* at the death of the testator took a vested interest as tenants in common, subject to their father's life estate; "subject to open and let in after born children who came into being during the existence of the prior life estate."  The ruling is not in conflict with Kinney v. Mathews where the deeds in question were judicially construed, nor with the later cases cited in the opinion.

Tenants in Common.

III.  It is insisted that we have overlooked the real question involved in the defective acknowledgment to the deed at number 3 of the abstract, conveying the 39-acre tract, A, and have disregarded the majority opinion in Chauvin v. Wagner, 18 Mo. 531.  The certificate recites that they (the married women) "executed and delivered the deed freely and without compulsion of their said respective husbands."  The objection is that the words "or undue influence" were omitted, and exception is also taken to the quotation from the opinion of Scott, J., as not stating the law of the case.

Acknowledgment.

It will be seen from the opinion of Gamble, J., at page 545, that the statute required the certificate to state that "the contents were made known and explained to her."  The certificate recited that Mrs. Chauvin was "made acquainted with the contents of the deed."  It

289 Mo.—18

was held that the statement that she was made acquainted with the contents of the deed was a substantial compliance with the statute.

The certificate was further required to state that "she does not wish to retract." The court said: "She is to be examined as to whether the deed had been executed by her voluntarily, not whether she wished it to be in force as a conveyance. Still, if the acknowledgment which she is to make, is to include her present wishes in relation to the deed, it must so appear." [P. 548.]

It was held by the whole court that it would have been superfluous to "make known and explain the contents of the deed" (although the statute required it) to one already acquainted therewith, but it was also held by two of the judges that, as the law still gave Mrs. Chauvin a *locus penitentiae*, the failure to state that "she did not wish to retract" was fatal; SCOTT, J., dissenting.

We are asked to declare this deed, executed in the year 1856, and under which possession has ever since been held, void because of the omission of the words "or undue influence" in the certificate of acknowledgment. It is argued that there is a difference between compulsion and undue influence, and that the fact that she executed the deed freely and without compulsion is not a compliance with the law. There may be a shadowy distinction, but the law looks to the substance rather than the shadow.

The motion for rehearing is overruled. All concur.